.J. R. Bowsher v. Chicago, Burlington & Quincy Railroad Company, Appellant.

:**Ejectment of Passenger**: FAILURE TO BUY TICKET: *Excuse for.* Where a passenger made no effort to get a ticket at a certain junction, not knowing there was a ticket office there, he was not precluded thereby from urging that the time was short, and during most of it the way to the office was obstructed, and the agent was engaged in transferring mail, etc., as an excuse to the conductor for not having a ticket; and a judgment for the passenger, in an action for ejection, will not be disturbed because of a refusal to instruct that he was so precluded.

`MEASURE OF DAMAGES: *Services of doctor.* In an action for injuries sustained by reason of a passenger's ejection from a train, the amount paid a doctor for services was not a measure of damages, but the reasonable value of the services rendered.

*Evidence.* Where, in an action for injuries to a passenger sustained by reason of ejection from a train, where there was no evidence of the reasonable value of a doctor's services rendered to the passenger, he could not recover for such services.

·**Cross-Examination.** Where evidence prejudicial to the opposing party had no reference to any matter called out on direct examination, it was error to overrule objections thereto on cross-examination.

:**Rule Applied.** It appearing by the conductor that a passenger was ejected for failure to pay ten cents extra fare on failure to buy a ticket, it was error to permit testimony as to whether

he had not carried others without exacting such payment; and that another was injured by passing under a plank used to transfer baggage and mail.

**Instructions:** SINGLING OUT PHASES OF CASE.   Where, in an action for ejection from a car, a number of disinterested witnesses gave contradictory testimony, and different from that of the passenger, as to what occurred between the passenger and the conductor, it was not error to instruct the jury to consider the probability or improbability of such testimony, as singling out this phase of the case to defendant's prejudice.

**Amended Abstract:** REPETITION: *Costs.*   The costs of an amended abstract should not be charged to the party filing it merely because it contains more repetition than is really necessary.

**Remittitur.**   Appellee can avoid reversal for an improper recovery by remitting its amount by offer made in this court.

*Appeal from Decatur District Court.*—HON. W. H. TED-FORD, Judge.

SATURDAY, JANUARY 19, 1901.

ACTION to recover damages for an alleged wrongful ejection of the plaintiff from one of the defendant's passenger trains for the reason that the plaintiff, not having procured a passage ticket, refused to pay the 10 cents in addition to the usual fare demanded by the defendant's conductor. Plaintiff alleges reasons, as will hereafter appear, why he had not procured a ticket, and that he made said reasons known to the conductor, and that, nothwithstanding said reasons, which were sufficient, he was wrongfully ejected from the train, and with unnecessary force and violence, to his damage $1,982, which he asks to recover.   Defendant answered, denying generally, and, upon trial had, verdict and judgment were rendered in favor of the plaintiff for $405.   Defendant appeals.—*Reversed.*

*Harvey & Parrish* for appellant.

*Hoffman & McVey* for appellee.

Given, C. J.—I.   Section 2077 of the Code provides
as follows:  "A charge of ten cents may be added to the fare
of any passenger when the same is paid upon the cars, if a
ticket might have been procured within a reasonable time
before the departure of the train."  Plaintiff has the burden
of alleging such ultimate facts as show that he could not have
procured a ticket within a reasonable time before the de-
parture of the train upon which he took passage.  All ulti-
mate facts alleged and necessary to be noticed in considering
the questions presented are these:  Defendant is a carrier
of passengers on ias railways, one of which runs south
through the town of Leon to and beyond Bethany Junction,
and another through Bethany Junction west to and beyond
the town of Lamoni.   On the 9th day of March,
1897, the plaintiff, desiring to go from Leon to La-
moni by way of Bethany Junction, got on board of
one of defendant's passenger trains without a ticket, at a
stopping place in Leon, where no tickets were on sale. While
this train stopped at the regular station in Leon, he applied
to the agent there for a ticket, but was told that there was not
time for him to procure one, and that he could pay the same
fare on the train.  Plaintiff paid the usual fare to the junc-
tion, and on arriving there went on board the passenger train
bound for Lamoni and beyond, without procuring a ticket.
When defendant's conductor called on plaintiff for his fare,
plaintiff gave him 10 cents, the regular fare being 8 cents,
whereupon the conductor insisted upon his paying the 10
cents additional because he had not procured a ticket; and
the plaintiff refusing to do so, the conductor caused him to
be ejected from the train before reaching Lamoni.   The
most, if not the only, material conflict in the evidence is as
to the reasons plaintiff gave the conductor why he had not
procured a ticket, the force used in ejecting him from the
train, and the amount of damage sustained.   There was a
ticket office and agent at the junction, and it is questioned

whether, under the circumstances proven, "a ticket might have been procured within a reasonable time before the departure of the train for Lamoni" by the plaintiff.   Plaintiff alleges as reasons for not procuring a ticket in substance as follows:   That he had previously been permitted to travel from Leon to Lamoni and to other points on defendant's roads without procuring a ticket and without paying extra. That others had been permitted to do so, and that he had no notice of any change.   That he had been told by the agent at Leon that he had not time to sell him a ticket; that he could pay on the train without extra charge; and that, relying thereon, and on the former custom, he went on said train.   That plaintiff was not made acquainted with the fact that passengers must have tickets, nor that he would be required to pay an additional 10 cents if he did not.   That defendant did not at that time maintain a sufficient and convenient place for passengers to change trains or procure tickets at said junction, for that the trains were stopped a considerable distance apart.   That the time between the arrival of the train from Leon and the departure of the train for Lamoni was brief.   That the location of the ticket office was obscured by another building.   That the way to the ticket office was obscured by planks used in transferring mail and baggage from each train to the other, and that the ticket agent was required to assist in the transfer of mail and baggage, so that there was no opportunity of procuring a ticket from him within a reasonable time before the departure of the train for Lamoni.   The court instructed to the effect that the assurance of the agent at Leon did not entitle the plaintiff to be carried from the junction to Lamoni at the ticket rate without a ticket, and the case was submitted upon the question whether, under all the facts and circumstances, plaintiff should have procured a ticket at the junction.

II.   Defendant quotes the plaintiff as testifying, "I wasn't trying to get a ticket, as I didn't know there was any

ticket office there," and insists that plaintiff cannot com-
plain that the alleged conditions prevented him from
doing what he never attempted to do, and that, there-
fore, the court erred in refusing defendant's second
instruction asked.     The plaintiff did not give as his only
reason for not procuring a ticket that he did not know there
was a ticket office at the junction.  He testified that when
the St. Joe train pulled away, the plank on that side was
pulled up, and there was nothing to hinder getting a ticket.
He says: "I knew the plank was down after the train left,
and that I would have had whatever time there was between
the time the St. Joe train pulled out and the Grant City
train pulled out—about two minutes—to get a ticket, if I
had known there was a place there to buy tickets; but I
wouldn't have taken the chances, as a man might have got
left; and I wasn't trying to get a ticket, as I didn't know
there was any ticket office there."    The presence of the ob-
struction (the plank), lack of time after it was removed, and
the engagements of the ticket agent are relied upon as rea-
sons for not trying to and not procuring a ticket.  There was
no error in refusing the instruction asked.

III.   The jury found specially that plaintiff gave to
the conductor as a reason for his refusal to pay the extra 10
cents that he did not know that defendant had a ticket office
at said junction, that he had no time to procure a ticket, and
that it would not have been safe for him to have attempted
to procure a ticket.  Defendant concedes that the evidence
was conflicting on these points, but insists that the findings
are not warranted by the evidence, and that they show pas-
sion and prejudice.   These findings have such support in the
evidence that we should not disturb the verdict on this
ground.

IV.   Plaintiff claims as one item of damage, "for
medicine and doctor's bill, $50."   The court, in stating the

issues, said that the plaintiff claimed "that he had to pay out a doctor's bill by reason of said injury to the amount of $50," and instructed that, if plaintiff was entitled to recover, he should be allowed for "doctor's bill paid because of such injury." Defendant insists, and correctly so, that it is the reasonable value of the services that is the measure of recovery, not the amount charged nor the amount paid, and that there is no evidence as to the reasonable value of the services claimed for. There is no evidence either of payment or reasonable value. It is held in some cases that evidence of the amount actually paid for such services may be considered as some evidence of the value. See *Colwell v. Railway Co.,* 57 Hun, 452 (10 N. Y. Supp. 636). The instruction is erroneous, not only because it submitted a wrong measure of recovery, but because there is no evidence of payment. To obviate this error, plaintiff files in this court an offer to remit $50 from the judgment. That this may be done, see notes to section 4139, Code, under "Remitting Excess and Final Judgment in the Supreme Court for Balance;" but, as we find other grounds for reversal, we may not affirm upon the judgment being thus modified.

V. The conductor was called and examined by the defendant, and on cross-examination was asked if he had not, in the year 1897, carried J. H. McVey from Bethany Junction to Lamoni at least twenty-five times, to which defendant's objection as immaterial and not proper cross-examination was overruled. The witness answered, "I don't think I have carried him that many times without his paying train fare." He was asked if he had ever demanded 10 cents extra from W. H. Spurrier prior to March 9, 1897, which was objected to for the same reason, the objection overruled, and the witness answered to the effect that he always demanded the 10 cents extra, unless the company was to blame for the passengers not having a ticket. This evidence was not as to any matter called out on

the examination of this witness in chief, and was, therefore, not proper cross-examination. We think the objections should have been sustained.      See *Sherman v. Railroad Co.,* 40 Iowa, 45; *Stone v. Railroad Co.,* 47 Iowa, 83.      The same is true as to the cross-examination of this witness as to one Bradley having been injured by passing under the gang plank used in transferring mail and baggage.      This evidence was manifestly prejudicial to the appellant.

VI.      Complaint is made of the sixteenth instruction; especially the following paragraph thereof: "You may consider the probability or improbability of the testimony of the witnesses who have no interest in the matter, remembering just what was said between the conductor and the plaintiff just prior to the ejection." The complaint is not that this is an erroneous statement of the law, but that it improperly singled out this phase of the case to the defendant's prejudice.      The instruction fully and fairly presented the rules for weighing the evidence.      It is contended that, as a number of disinterested witnesses gave testimony different from that of the plaintiff as to what occurred between the plaintiff and the conductor, this part of the instruction was prejudicial.      We think, in view of the contradictions, it was called for, and proper.      I is claimed that "the instructions as a whole were too verbose, discursive, and contradictory, and calculated to mislead the jury." This criticism is not supported by an examination of the instructions.      Complaint is also made of the conduct of counsel for plaintiff in the closing argument.      Whatever prejudice might have arisen from that argument was fully obviated by the timely caution and instruction of the court in the charge.

VII.      Plaintiff filed an amendment to the abstract, consisting of seventy-six pages.      Defendant insists that it consists largely of repetitions, that it was unnecessary, and that the costs thereof should be charged to the plaintiff.      There is more repetition than is really necessary, but upon the whole, we think the amended

abstract was proper to be made, and that the costs thereof should follow the costs of the suit.    For the reasons above state, the judgment of the district court is REVERSED.