ROA, RESPONDENT, *v.* PUIG ET AL., APPELLANTS.

APPEAL from the District Court of San Juan, Section 2.

No. 911.—Decided April 18, 1913.

VIS MAJOR.—The falling of a beam from the ceiling of a house due to the lack of necessary repairs and to the action of rains common in a tropical climate, cannot be attributed to *vis. major.*,

LESSEE OF DWELLING — CONDITION OF LEASED DWELLING — NOTICE TO LESSOR. — The law does not require the lessee of a dwelling to notify the owner of the bad state of repair of the same, especially when the extent thereof cannot be determined from a casual inspection.

DAMAGES—PREVIOUS ACCIDENT—EVIDENCE.—In an action to recover damages for the falling of a beam from the ceiling of a house, the trial court may

take into consideration the fact that another accident had occurred six or seven months before in order to determine whether the owner should have taken this as an indication that the house was in a bad condition and needed repairs.

ID.—NEGLIGENCE—FRIGHT—PREGNANCY—MISCARRIAGE.—A person who by negligent acts causes such fright to a pregnant woman as to produce a miscarriage as a direct and proximate cause is liable in an action for damages for the physical pains and suffering endured as a direct result of such acts although the woman sustains no physical damage to her person.

ID.—FRIGHT—PREGNANCY—MISCARRIAGE—REMOTE CAUSE.—When a pregnant woman has a miscarriage some time after the falling of a beam from the ceiling of the house in which she lives on account of the fact, according to her own statement, that when she heard the noise she became alarmed, not for her own life but for that of her child which was in some other part of the house, it cannot be said that the immediate and direct relation of cause and effect exists between the falling of the beam and the miscarriage, and the owner of the house is not liable in damages for the expenses and the suffering caused her as a result of said miscarriage.

ID.—ACTUAL DAMAGES—AMOUNT OF DAMAGES.—The amount of damages in a case of this character should be proportional to the physical injuries and material damages sustained and should be neither more nor less than the amount proven.

ID.—MEDICAL ATTENDANCE.—In cases of damages for physical injuries when one of the items claimed is fees for medical attendance, it must be proved that the plaintiff actually paid such fees or that he is legally bound to pay the same, that the amount thereof is fair, just and correct and that the medical attendance was necessary on account of the injuries sustained.

The facts are stated in the opinion.

Messrs. *Eduardo Acuña* and *Adrián Acosta* for Concepción Puig.

Messrs. *Rafael López Landrón* and *Hugh R. Francis* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

The appellant herein, Concepción Puig, is the owner of House No. 9 on San Justo Street in the city of San Juan. Some years ago she rented it to Manuel Soto, who had in his service the respondent, Elisa Roa. One of the defendants, Dr. Arturo Fernández Sanjurjo, is the agent of the owner of the house and has no further interest in the matter as he was exonerated by the judgment of the court below, and no appeal was taken from that decision.

This action originated by virtue of a complaint filed by Elisa Roa against Concepción Puig and Arturo Fernández

Sanjurjo claiming the sum of $5,000 for damages, because the defendant Mrs. Concepción Puig, being the owner of house number 9 on San Justo Street in this city, and the other defendant, Fernández Sanjurjo, her agent, under the obligation of collecting the rents thereof and of keeping said house in good condition, the aforesaid Fernández Sanjurjo knowing that the ceilings of said house were entirely in ruins, and, by reason of the negligence of said defendants in making repairs thereof, on April 14, 1911, a part of the ceiling of one of the rooms in the aforesaid house fell down producing such a noise that Elisa Roa, who was at the time living in said house, received a fright of such a nature that it resulted in a miscarriage of a female fœtus and the consequent physical and mental pain and distress.

In answer to the complaint the defendants denied all the facts alleged and a trial of the case ensued in April, 1912. On June 10 following a judgment was rendered against the defendant, Concepción Puig, for five thousand dollars ($5,000), the amount claimed, and costs, from which this appeal was duly taken. The other defendant was discharged from all liability. The appellants' counsel assigns errors, alleged to have been committed on the trial, as follows:

"1. The court erred in considering that it was fully shown by the evidence which was introduced at the trial that the defendant, Concepción Puig, did not make the necessary repairs in house No. 9, on San Justo Street, to prevent the falling of the ceiling in one of the rooms thereof, which occurred on April 19, 1911.

"2. The court erred in considering the negligence of the defendant, in finding that previously to April 14, 1911—that is, about the month of September, 1910, the loosening of another beam had occurred in the ceiling of said room.

"3. The court erred, and committed a substantial and fundamental error, in considering, with regard to the accident that occurred in the house in question in the month of September, 1910, that another beam had been unfastened, assuming

thereby, at the same time and simultaneously, that the beam referred to had been supported by means of another one that was put in place and which prevented the falling thereof.

"4. The court erred in considering that even though the defendant, as a result of the accident which occurred in September, 1910, had made an examination of the remaining timberwork to ascertain for herself the condition thereof, such examination and inspection were not carried out with the care and diligence which was required under the circumstances, nor were the same made by competent persons who were qualified to give an opinion as to the repairs that should have been made.

"5. The court erred in finding, from the effect of the evidence, that the falling of the beam which took place on April 14, 1911, had caused a great fright to the plaintiff, and that a miscarriage ensued in consequence thereof, and a condition of melancholy and nervous prostration was caused, which operated upon her physical and mental health.

"6. The court erred in considering, in the present case, any liability for damages as provided for in sections 396, 1803 and 1808 of the Revised Civil Code; inasmuch as there does not exist in this case any immediate and natural relation of cause and effect between the negligent act and the damage which is alleged to have been caused, nor any of the essential elements contained in said sections.

"7. The court erred in granting the sum of five thousand dollars ($5,000) for damages sustained by the plaintiff without sufficiently specifying the same and notwithstanding the fact that they had not been ascertained."

Let us examine these assignments. It is alleged and proven that on April 14, 1911, a beam in one of the rooms of the dwelling occupied by the plaintiff fell, making a considerable noise; on or about the 22d day of said month the plaintiff, who was pregnant at the time, suffered a miscarriage, being delivered of a female fœtus about six months advanced toward maturity; and that medical attendance was necessary

and a surgical operation ensued, the plaintiff being affected thereby in her temperament, all of which was alleged to have been produced by the nervous shock caused by the fright which she experienced from the falling of the beam.

The first question involved herein and which we have to consider is one of fact, which must be determined from an examination of the evidence disclosed in the record. It is, was the falling of the beam the proximate cause of the injury suffered by the plaintiff? Or, in other words, was the resulting miscarriage too remote to be chargeable to the negligence of the defendant?

The trial court in its opinion finds substantially the following facts, numbered 1, 2 and 3:

1. That the plaintiff has shown, by the evidence introduced at the trial, that the defendant, Concepción Puig, who was the owner of house number 9 on San Justo Street, did not take the necessary steps to avoid the falling of the ceiling of one of the rooms, which occurred on April 14, 1911; and with the purpose of showing the negligence of said defendant it was likewise shown that prior to that date the loosening of a beam in the same room took place, which was thereupon supported by putting and adjusting to it another beam thus avoiding its falling; that no examination was made in that apartment as to the condition of the remaining beams, which should have been done by a diligent and careful owner, with the purpose of satisfying himself of the conditions of said beams, because although it appears from the evidence introduced by the defendant that such an examination was made, it was not carried out with all the diligence and care required by the circumstances, and further, that the same was made by a person who lacked the necessary qualifications to understand the true condition to give a satisfactory opinion as to the repairs which should have been executed, or of the measures of precaution that should have been taken to avoid the unfortunate accident that took place shortly thereafter.

2. That the negligence and lack of care of the owner of

the house, who, notwithstanding the fact that she had already been warned by a similar accident, neglected to take the necessary measures of precaution which are expressly required by the law, under the Civil Code, for the purpose of avoiding a repetition of the accident, is a matter which cannot be denied. If the owner had not been negligent and careless, and had foreseen what might have happened by reason of her negligence, certainly no damages would have occurred. And no allegation could be presented here showing that the persons living in said house failed to give to the owner the proper notification as to the matter, because from the evidence introduced at the trial it was shown that the bad condition of said beams was a matter which could not be reached merely by the sight of any observer; or as it has been said by an eminent commentator on our code it would be against all idea of justice to exonerate the owner from this liability simply by reason of the fact that he had not been informed at the proper time by a third person of the apparent danger of the falling of the ceiling, where, according to the law, he was required to make repairs or destroy the same, especially in order that such an imminent danger should not be changed into a serious accident to the prejudice of other persons.

3. That it was sufficiently shown at the trial that Mrs. Roa, the plaintiff herein, was pregnant when the accident occurred; that she received a great fright, inasmuch as she thought that one of her children, who was in the room where the accident happened, had been killed; that on account of said fright a miscarriage ensued, which was originated and caused by the fright and said accident; that subsequently to the miscarriage it was necessary that a surgical operation should be performed upon her; that as a result of said fright a condition of melancholy and nervous prostration followed to the detriment of her physical and mental health from which she is still suffering, although the extent thereof cannot be determined; that such a nervous condition has produced an entire change in the temperament and character of Mrs. Roa, who is now ill-

humored, forgetful and choleric, while previously she was af-
fectionate and amiable, and to such an extent has this change
been effected upon her character that, according to the state-
ments made by one of the witnesses, who was bound to her by
the relation of master and servant, he declared that "subse-
quently to the occurrence nobody could bear her."

The appellant contends that these findings are not war-
ranted by the evidence which was introduced on the trial and
appears in the statements of facts. We must then examine the
record in regard thereto. Perhaps it would be as well to take
up these matters in the order in which they are presented by
the several assignments of error heretofore set out.

(a) The first assignment refers to the finding made by the
trial court as to the negligence of the appellant in not making
the necessary repairs to the house occupied by the respondent,
so as to prevent the falling of the beam therein, which oc-
curred on April 14, 1911. The record plainly shows that the
necessary repairs were not made, and sufficiently indicates
that it was on this account that the beam became loosened,
probably by the usual rains, and thereby fell from its place in
the wall. The statute, section 398 of the Civil Code, excuses
the owner from liability for such accidents in cases of *vis
major,* but we cannot consider this as falling under that ex-
ception. If this accident had been caused by an earthquake
or a stroke of lightning, or other such unusual natural phenom-
enon, the appellant would have been excused from liability;
but for the usual results attending the tropical weather, to
which we are subject in this climate, no exception is made and
the liability of the owner of the property results. Nor can it
be alleged by the owner that she was not notified by the ten-
ant of the condition of the house. Such notice is not required
by the law and in this case the bad condition of the beams was
not perceptible to the eye of any ordinary observer. The
agent of the owner, considering the accident which took place
in September of the previous year, should have been on the
alert and have given the necessary instruction in due time so

that the proper examination as to the condition of the beams of the ceiling could have been made, in order to provide for all the repairs required by the circumstances, thus protecting his principal from any charge of fault or negligence. Therefore, we must arrive at the conclusion that the first assignment of error which has been presented by the appellant is not well founded.

(*b*) The second and third errors, complained of by the appellant's counsel, are to the effect that the trial court, in arriving at the negligence of the owner, took into consideration the fact that previously to April 14, 1911, the day on which the beam, which is alleged to have caused damage, fell, the loosening of another beam had occurred in the ceiling of the said room; that this occurrence took place in the month of September, 1910. Some argument is made in regard to the question of whether or not the two beams were located in the same room or not, but it is evident that if they were not in the same room, they were in adjoining rooms; so that matter is immaterial. The fact of the previous accident occurring some six or seven months before, is considered by the trial court merely as an incident showing that the defendant should have been upon her guard, and as a kind of a warning or indication that the house was old and in bad repair and needed the attention of the owner or her authorized agent. For this purpose we think the incident occurring in September, 1910, was a matter which could be taken into consideration by the trial court in making up its judgment.

(*c*) The fourth error complained of by the appellant relates to the examination made by the agents of the owner as a result of the accident which occurred in September; the trial court finding that such examination and inspection were not practiced with the care and diligence which the circumstances of the case required, and were not made by persons competent to do such business and to give an opinion as to what repairs were necessary to be made upon the house. It appears to us that the trial court correctly summarized the

evidence on this question. Examinations were made shortly
after the accident in September, but so far as the record
shows, they were not as thorough as they might have been and
were performed only by ordinary mechanics who did not ex-
hibit any special skill in the matter, and it has afterwards
transpired that when the house had been given up by the ten-
ant, it was found to be necessary to make repairs in the entire
timberwork, and this was caused to be done by the agent of
the appellant a few months afterwards. The evidence of some
of the witnesses in regard to the condition of the beams is
very strong on the points of their being utterly rotten and
unfit for the use to which they were applied. We cannot re-
gard the finding of the court in this matter to be incorrect.

(d) The fifth and sixth assignments of error relate to the
finding of fact made by the trial court to the effect that the
falling of the beam, which took place on Good Friday, 1911,
caused a great fright to the plaintiff and resulted in a mis-
carriage, which she suffered a few days thereafter, and the
consequent condition of melancholy and nervous prostration,
which operated detrimentally upon her physical and mental
health, and in the application of the law as found in sections
1803 and 1808 of the Civil Code; the appellant contending that
there does not exist in this case any immediate and natural
relation of cause and effect between the wrongful act of neg-
lect alleged in the complaint and the damage which it is con-
tended was caused thereby, denying also the existence of any
of the essential elements of damage as contained in the stat-
utes. It is a well-established principle that when physical
injury such as miscarriage flows directly from the extreme
fright or shock caused by the negligence of the defendant who
owes the duty of care to the injured person, such fright or
shock is a link in the chain of presumed causation as efficient
as physical impact from which like results might arise. *Pan-
kopf* v. *Hinkley*, 24 L. R. A. (N. S.), 1161. It is held in many
cases that mere fright caused by another's negligence without
any physical consequence cannot be made the basis of a claim

for damages. For instance, where a woman, while passing a pot of molten lead, was struck by four or five drops of the metal, which exploded, causing a slight injury but a radical impairment of her nervous system, general health, and bodily organs, resulting in three successive miscarriages, these were not the ordinary and natural results of the accident for which damages could be recovered. *Hack v. Dady,* 118 N. Y. Supp., 906.

But the approved doctrine now generally held by the most advanced cases is that one who causes nervous excitement in a pregnant woman, for instance, by his wrongful trespass upon her home, to such an extent as to cause her miscarriage, is liable to her for the bodily pain and suffering endured in direct line of causation from the wrongful act, although no physical damage is done to her person. *Engle v. Simmons,* 7 L. R. A. (N. S.), 96.

The same doctrine is held in the case of *Simone v. Rhode Island Co.,* 9 L. R. A. (N. S.), 740, and in *Green v. Shoemaker,* 23 L. R. A. (N. S.), 667; but in all such cases, the fright, which is held to be the proximate cause of the accident, arises from the incident itself, and by the application thereof directly to the person frightened, without the intervention of any third person or thing in the chain of causation. It is different where the fright of which the plaintiff complains was caused on account of the danger of some third person and not of personal danger which the plaintiff herself might have apprehended. In the case at bar, the fright causing the damage of which the plaintiff is the alleged victim, was not the proximate cause of the injury, inasmuch as it operated through a third person, to wit, the child of the plaintiff, who, at the time the beam fell causing the noise, was not in the room with her mother, and the sound of the falling of the beam did not frighten the plaintiff as boding injury to herself, but only alarmed her for the safety of the child. The negligence of the defendant in failing to repair the house, whereby the beam was caused to fall, making a noise which, taken in connection

with the absence of the child from its mother's presence, alarmed her for its safety, thus bringing on a nervous condition which eventuated in a miscarriage, is too remotely connected with the injuries resulting therefrom to attach liability to the owner of the house, residing in Spain, who is charged with negligence in failing to make the necessary repairs. *Huston* v. *Borough of Freemansburg,* 3 L. R. A. (N. S.), 49, and note.

While the evidence as to the fright is not so conclusive as it should be inasmuch as the only testimony given in regard to the matter was but of the cook employed in the house, who was the only eye-witness that was there when the accident occurred, and saw the plaintiff immediately after the falling of the beam, the statements made by the expert physicians who afterwards examined the plaintiff being entirely hearsay as to the fright; we may admit, however, that plaintiff really received a fright on account of the danger which occurred to her child and not that to which she herself was exposed, and that the falling of the beam was the remote cause of said fright; yet the immediate and sole relation of cause and effect between the falling of the beam and the miscarriage which ensued to the plaintiff does not exist between those facts so closely connected one with the other as to base upon the same any liability on the part of the defendant, who is the owner of the house. We do not think that there existed any necessary relation of cause and effect between the falling of the beam and the miscarriage of the plaintiff clearly connecting these facts, which is an indispensable requirement to fixing any liability upon the defendant. Considering the time which elapsed between the falling of the beam and the date of the miscarriage of the plaintiff, we are not satisfied that such miscarriage was necessarily the result of the fright and not caused by some other natural or fortuitous accident occurring independently of the falling of the beam.

(*e*) The seventh error complained of by the appellant has relation to the amount of damages found by the trial court,

which is the sum of $5,000, being the total amount claimed by the plaintiff in her complaint. In regard to the measure of actual damages, it may be observed that they should be awarded as a compensation to the plaintiff for any injury actually suffered by her from the acts or the negligence of the defendant; and, in amount, they should be exactly commensurate with the injuries sustained by her, whether in her person or her property, and neither less nor more than the amount proven. 1 Street on Foundation of Legal Liability, 479; Greenleaf on Evidence (14th Ed.), section 253. The amount claimed for medical attendance in this case is remarkably large, amounting to $1,800. The plaintiff was sick, as the evidence shows, for about three months, and two physicians were in attendance for at least a part of the time. The evidence does not disclose that these fees, claimed by the physicians, were actually paid; but, in a general way, it may be inferred that such is the claim made by the plaintiff. In cases of damages for personal injuries where, as an item thereof, doctors' bills are set out, it is necessary to prove, *first*, the actual payment by the plaintiff of the bills, or that the plaintiff is legally bound to pay the same and that the amount thereof is fair, just and correct; and, *second*, that the medical attendance was necessary on account of the injuries sustained. *MacDonald* v. *I. C. R. Co.*, 55 N. W. Rep., 102; *Omaha St. R. Co.* v. *Emminger*, 77 N. W. Rep., 675; *Indianapolis* v. *Gaston*, 58 Ind., 224; *Bowsher* v. *C. B. & Q. R. Co.*, 84 N. W. Rep., 958; *Abbitt* v. *St. Louis Tr. Co.*, 79 S. W. Rep., 496; *Heater* v. *D. L. & W. R. Co.*, 85 N. Y. Supp., 524; *San Antonio St. Ry. Co.* v. *Muth*, 7 Tex. Civ. App., 443; 13 Cyc., 140; 1 Street F. L. L., 149–159.

A large item is claimed also by the plaintiff for extra food of fine quality and for champagne, which, it is alleged, was necessary in her delicate condition. There is also evidence to the effect that such food was not necessary and that champagne was injurious in such cases. Taking all the evidence together, it seems to us that the judgment is entirely exces-

sive, even had the liability of the defendant been otherwise properly proven.

Inasmuch as the injuries complained of are not shown to have been proximately caused by the negligence of the defendant, the judgment rendered by the district court, on the tenth. day of June, 1912, should be reversed, and judgment herein rendered for the defendant, without costs to either party.

*Reversed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.