175 P.2d 201

WHITE v. BREEDON.

No. 4857.

Supreme Court of Arizona.

Dec. 9, 1946.

118

Theodore G. McKesson and Thomas P. Riordan, both of Phœnix, for appellant.

Fred V. Moore, of Phœnix, for appellee.

STANFORD, Chief Justice.

On March 13, 1945, this court decided the case of Breedon v. White, 62 Ariz. 256, 156 P.2d 904, a suit brought in the superior court to determine the matter relating to the instant case. The case was dismissed by the trial court, but sent back by this court requiring the order of dismissal to be set aside and the case reinstated.

This case comes to us from the superior court on appeal by appellant, hereinafter called defendant, from a judgment in favor of appellee, hereinafter called plaintiff.

On April 17, 1943, at about the hour of 11 p. m., plaintiff was driving his car in a southeasterly direction upon an oil sur-faced detour which had been constructed along the side of U. S. Highway 60-70, a public highway within Maricopa County, Arizona. At a point about four miles southeast of Wittman, Arizona, while plaintiff was still upon said detour, he col-lided with a large pile of black-top material, which was placed across the entire width of the detour. Said detour was built for the purpose of diverting traffic from the main highway while the same was under construction by the defendant herein. The main highway had been opened for travel on the previous day, or the 16th day of April, 1943, but that fact was unknown to plaintiff. There was no barricade at the junction of the detour and the main high-way, but evidence shows that there was a pole placed over a portion of the highway. Plaintiff, however, claims that the pole was not there when he went over the highway, but placed there before pictures were taken of the detour the day following the ac-cident. There were no warning flares of any kind upon the pile of black-top material with which the plaintiff collided.

At the time of the accident there was a milk can in the back of plaintiff's car which struck him in the back at the time of the collision. Plaintiff suffered certain injuries, and his car certain damages, which are the subject of this action.

Additional facts are that plaintiff for about one and one-half years before the aforesaid accident, had been suffering from an ulcer of the stomach, but for a period of one year immediately preceding the acci-dent the ulcer had been dormant and plain-tiff had been physically able to perform all the necessary physical labor and duties con-nected with the operating of a mining lease, during the year preceding the accident, and during the aforesaid year was physically

able to follow his usual and customary occupation as a painter, but by reason of the accident he suffered a severe physical nervous shock causing the dormant ulcer to become extremely active and making the plaintiff unable to keep solid food on his stomach and otherwise made him ill and unable to follow his occupation as a miner and painter.

Defendant's first assignment of error is that the verdict of the jury was excessive and not warranted by the evidence. The second assignment was that it was plaintiff's own negligence that was the proximate cause of the accident. The third assignment includes the two foregoing assignments. The fourth assignment has reference to the court refusing to give an instruction as to the duty of persons driving an automobile to exercise ordinary care and diligence. The fifth assignment is that the trial court failed in its instructions to include contributory negligence.

Relating to the subject of injuries received by plaintiff, Dr. Coit I. Hughes, of Phœnix, testified as follows:

"Q. Did you have occasion to examine C. R. Breedon professionally on or about the 17th day of April, 1943, Doctor? A. I think it was a day or two after that.

"Q. What was Mr. Breedon's condition when you first examined him? A. Well, he was in a great deal of shock. He was vomiting and complaining of burning pain in his stomach.

"Q. Did he advise you that he had been in an accident shortly before coming up to see you? A. He did.

"Q. Now what did you prescribe as treatment for him, Doctor? A. Oh, he had a good deal of shock and I gave him something to relieve that and some aluminum hydroxide.

"Q. Did you give him a prescription to take for his stomach condition, to quiet his stomach down? A. Yes, sir.

"Q. Doctor, did you suggest he take a diet? A. Yes, sir.

"Q What if any kind of diet did you suggest? A. I suggested putting him on a milk diet, yes, sir.

"Q. How many times after that did you see him, Doctor? A. Oh, I saw him quite often.

"Q. Several times after that? A. Yes, a few days after that I was called out to the house at night.

"Q. What was his condition when you went out there? A. He was vomiting and vomiting some blood at that time.

"Q. And did you see him at other times besides that, Doctor? A. Yes, sir.

\* \* \* \* \* \*

"Mr. Moore: How long was he under your care? A. Oh, for several weeks. I wouldn't know just how long."

N. W. Duncan, who took photographs of the scene of the accident, accompanied plaintiff and his attorney to the place of the

accident the morning after it occurred, leaving Phœnix about 10 o'clock in the morning. He further testified:

"Q. Mr. Duncan, I think you stated that Mr. Breedon accompanied us on that trip up there at the time that those pictures were taken. Was that your testimony? A. Yes.

"Q. Did you have an opportunity to observe Mr. Breedon's physical condition the morning of the 18th? A. Yes, sir.

\* \* \* \* \* \*

"Mr. Moore: How did he look and how did he act? A. Well, he was an awful sick man. He was very white. He was retching, and after we got started in the car he got quite sick, and he was just an awfully, awfully sick man. I didn't think he had any business going on a trip after we got started. He was awfully sick."

Robert J. Miller testified that he was a partner in the mine where plaintiff had been working just prior to the accident. He said he had known plaintiff since 1920, and he said the kind of work plaintiff was doing at the mine prior to the accident was of a reasonable value of $10 per day. He also testified that he knew the condition of plaintiff's health before the accident and that he was in pretty good shape. He testified that after the accident, and before plaintiff came to his home, that plaintiff stayed with another party about a months time and then came to witness's home and there he had a milk diet and stayed there about a month.

Nora Giron testified that she had known the plaintiff four years; that on the 18th day of April, 1943, he came to the home of her brother where she was living. She said she prepared special kinds of meals for him consisting of oatmeal, milk and spinach; that he stayed at her brother's place four weeks.

By plaintiff's main cause of action he asked for damages to himself in the sum of $10,000; for loss of wages in the sum of $600 and by another cause of action asked for damages for $100 to his Ford pickup truck and $40 for towage service. The jury in the trial court awarded plaintiff damages in the sum of $3,750.

 Defendant quotes from our case of Jenkins v. Skelton, 21 Ariz. 663, 192 P. 249, 252: "There is likewise a dearth of evidence of 'pain and anguish of mind.' Plaintiff testified that something flew up in his face and he began to bleed. The extent or character of the injury is not mentioned. There is no suggestion of pain or suffering or of disfigurement, or of loss of time on account of his being struck in the face. He says he had no doctor bill to pay. At best, his damages on this account could be but nominal. \* \* \*.'"

Also defendant submits the case of Iaeger v. Metcalf, 11 Ariz. 283, 94 P. 1094, 1096, and from that case we quote: "\* \* \* Thus it has been held that, where the damages claimed are based upon loss of time in plaintiff's employment, he must establish by competent evidence the

value of such time or facts from which such value may be estimated with reasonable accuracy. Staal v. Grand St., etc., Railroad Co., 107 N.Y. 625, 13 N.E. 624; Winter v. Central Iowa R. Co., 74 Iowa 448, 38 N.W. 154. Such elements of damage as physician's, surgeon's, and nurse's bills and hospital expenditures occasioned by the injury, being susceptible of proof, must be estimated and allowed only when these may be ascertained by the jury with reasonable accuracy from the evidence. Bowsher v. Chicago, etc., Railroad Co., 113 Iowa 16, 84 N.W. 958; Brown v. White, 202 Pa. 297, 51 A. 962, 58 L.R.A. 321. In a broad sense it is never true that a jury may estimate damages without regard to the evidence. Even where the jury is permitted to exercise judgment and discretion as to the amount, such judgment and discretion must be based upon facts and circumstances proven in the case. * * *."

While the plaintiff insists that the case of Jenkins v. Skelton, supra, was a non-jury case and that the plaintiff's damages herein have been fully set out and that the case of Iaeger v. Metcalf, supra, was reversed on instructions, nevertheless those two cases are our cases and they do state the law.

In this regard the complaint on the subject of injuries to the plaintiff is that paragraph of the amended complaint which is as follows: "He suffered a severe physical and nervous shock, thereby causing his said dormant ulcer to become extremely active from the time of the happening of this accident to the time of filing this amended complaint, the plaintiff during said period of time being unable to keep any solid food upon his stomach and suffering intensely from nausea and vomiting, all to the plaintiff's damage in the sum of Ten Thousand ($10,000.00) Dollars." It will be seen from the foregoing allegations of the amended complaint that the plaintiff claims damages in the sum of $10,000, but does not allege any indication of any pain and suffering that might occur after the filing of the amended complaint, which was on June 26, 1943, nor does the evidence anywhere show that he is apt to suffer from the injuries claimed after date of filing his amended complaint. Inferentially a jury might believe that he would suffer after that time. We held in our case of Breedon v. White, supra [62 Ariz. 260, 156 P.2d 906], "It is our view that the complaint states a claim against the defendant upon which relief may be granted." But that statement by this court pre-supposed that the allegations of the complaint would be followed by sufficient proof.

In our recent case of City of Phœnix v. Mullen, 65 Ariz. 83, 174 P.2d 422, 425, we stated: "We think that from the testimony submitted in this case, and which has already been recited, the jury could infer that plaintiff's injuries were of a permanent character. * * * The permanency of

the injury was made an issue by the allegations of the complaint." In that case, as it will be shown, the opinion of this court was based on both the evidence and the allegations of the complaint.

■ The plaintiff asked for damages between the value of his car which was $350 before the accident and $250 afterwards, and asked for $40 for towage of the car. The proof submitted at the trial of the case warranted the trial court in instructing the jury that the total amount that could be allowed in respect to the car was $35. The plaintiff asked in his pleadings that this court affirm the judgment of the superior court.

■ Accordingly we believe the plaintiff is entitled to his loss of time for a period of 60 days at $10 a day, or $600; for the towage of his car $35, and an amount as damages for suffering between the date of the accident and the filing of his amended complaint in the sum of $1,000.

Therefore, if the plaintiff shall, within a period of 30 days from the date hereof file a remittitur in this court of all the judgment granted him in the superior court in excess of the amount of $1,635, the judgment of the trial court will be affirmed. Otherwise it will be reversed and the case remanded for new trial.

LA PRADE and MORGAN, JJ., concurring.