## Brown *v.* White, Appellant.

| 202 | 297 |
| 207 | 433 |
| 202 | 297 |
| e 26 SC | ⁵242 |
| 202 | 297 |
| e210 | ⁴189 |
| 202 | 297 |
| 220 | 342 |

*Negligence—Ice on sidewalk—Condition before and after accident.*

In an action to recover damages for personal injuries sustained by falling on ice on a sidewalk, where the evidence of plaintiff is positive that the ice was formed from water which the defendant had negligently permitted to flow from his premises, evidence as to the condition of the premises before and after the accident is immaterial.

*Negligence—Ice on sidewalk—Custom—Evidence.*

In an action to recover damages for personal injuries sustained by a fall on ice, which the defendant negligently permitted to form on his sidewalk, it is proper to reject testimony to the effect that in the borough where the accident occurred, it was customary to permit water from roofs and waste pipes to flow across pavements to gutters.

Obstructions on the footwalks of the streets of a municipality whether created by the accumulation of ice or otherwise, except such as are temporarily permitted for a lawful purpose are a nuisance, and the party responsible therefor is liable to the individual injured by his illegal act. Neither the custom of the citizens nor the acquiescence of the municipality will excuse such conduct.

*Negligence—Ice on sidewalk—Landlord and tenant.*

In an action to recover damages for personal injuries sustained by a fall on defendant's sidewalk, the defendant will not be heard to allege that his tenant, and not he, was liable for the condition of the sidewalk, where the evidence shows that the defendant constructed the pipes which carried the

water off the pavement, and that the use of the pipes by the tenant was in conformity with the defendant's intention when he leased the premises.

*Negligence—Damages—Physician's services.*

In an accident case a verdict cannot be sustained where the court permits the jury to estimate the expense of physician's services incurred by the plaintiff by reason of the injury, where there is no evidence whatever of the value of such services, although the physicians themselves describe the services rendered.

Argued March 11, 1902.  Appeal, No. 286, Jan. T., 1901, by defendant, from judgment of C. P. Franklin Co., April T., 1900, No. 393, on verdict for plaintiff in case of Annie Brown v. Hiram M. White.  Before DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.  Reversed.

Trespass to recover damages for personal injuries.  Before JOHN STEWART, P. J.

At the trial it appeared that plaintiff was injured on December 30, 1899, about six o'clock in the morning by falling on ice which had formed on the pavement of premises owned by defendant, and rented by him to other parties.  When John P. Snider, a witness for defendant, was on the stand, the following offer was made :

It appearing from the evidence in this case that the defendant, Hiram M. White, became the owner of the premises in front of which it is alleged this accident occurred, on April 1, 1898, we propose to show by this witness and others that the lot purchased by Mr. White on April 1, 1898, as well as the lot immediately on the north of him, owned by Mrs. Effie O. Gilbert, drained towards the street and through this archway, that at the time Mr. White became the owner of the lot in question the natural drainage from the lots of both properties was carried through the archway between the two houses.

We propose to show further than that, that the drippings from these hydrants, the drainage water from the roofs of both these houses, was carried through this archway on to the pavement, and that about April 1, 1899, the defendant, Hiram M. White, turned all the drainage of the surface water to the south side of his premises, so that nothing of that kind was carried through the arch ; that at the time of the accident the only water which could or did drain from his premises into

this archway, was from an inch and a quarter pipe, testified to by the plaintiff's witnesses.

We propose to show further that at the very time of the accident all the surface water from the property on the north, it being the Gilbert property, was carried into this archway and discharged out over the pavement in front of the premises.

This to be followed by testimony that the condition of things, so far as the defendant, White, is concerned, is the usual and generally existing condition of things maintained by property owners in this town.

Mr. Sharpe : This offer is objected to as being entirely irrelevant and immaterial, because the defendant not proposing to show by the offer that the drainage from the rear part of the Gilbert lot contributed in any degree to the ice which formed on the pavement and upon which the plaintiff fell, the conditions of affairs as it existed prior to April 1, 1899, and whether the defendant did or did not reduce the amount of water flowing through the archway, would not affect the liability of the defendant in this case.

As for that portion of the offer by which the defendant proposes to show that throughout the borough surface drainage is carried in the manner shown here, over the sidewalks of the town, this is entirely irrelevant, because if other persons committed nuisances it would not affect in any way the right of the plaintiff in this case to recover in this action.

The Court: The defendant may show the conditions as they existed upon the defendant's premises at the time the accident is alleged to have occurred. It is not competent for him to show the conditions existing prior to that time for purposes of comparison.

With respect to his offer of evidence which is to follow this present offer, we will meet that in a distinct offer.

Objection sustained, evidence excluded.   Bill sealed for defendant. [1]

We propose to show by this witness and others that all over this town hydrants and drain pipes are used for conducting water on to the pavements and that water is conducted across the pavements to the gutters in a manner similar to this, through uncovered gutters.   We propose to show further that that is

the ordinary way of conducting the water from the roofs through spouts over the pavement.

Mr. Sharpe : This offer is objected to as being irrelevant and immaterial.

1. Because the defendant cannot, by the evidence which it is proposed to offer, affect the plaintiff's right to recover in this action.

2. The evidence is objected to as being incompetent, because the fact that generally property holders in the borough conduct water from their lots and houses in a negligent and careless manner over the sidewalks, would not relieve the defendant from any liability in this action.

The Court: Objections sustained. Evidence excluded. Bill sealed for defendant. [2]

It being alleged by the plaintiff in the testimony offered that the accident was the result of ice being formed on the sidewalk of the property adjoining the property of the defendant, from water which flowed from the drain pipe on the premises of the defendant, we propose to show by this witness and others, that it is usual, customary and necessary for the convenience, use and enjoyment of dwelling houses in the borough of Chambersburg, to run water from drain pipes for domestic purposes such as this from hydrants and from roofs, over the pavements in the same manner as this was done, through uncovered gutters. This has been the custom with reference to drain pipes since the erection of the waterworks in this town in 1876, or about that time. It has been the custom to run water from roofs through spouts over the pavement through uncovered gutters from a time whereof no witness can remember to the contrary.

This is to be followed by evidence that this drain pipe was constructed in a proper and workmanlike manner.

To be followed further by evidence that this defendant was not the occupant of the premises at the time of the accident, and never was the occupant of the premises, and that he neither had notice or knowledge of any accumulation of the ice on his premises at a time prior to the accident.

Mr. Sharpe : This offer is objected to, because testimony as to what is usual and customary is not relevant to this issue. Even if other property owners in the borough of Chambersburg have been accustomed to allow and maintain their gutters in an

unsafe and negligent manner, that fact cannot avail as a matter of defense in the present action.

2. The offer is generally irrelevant and immaterial. As to the last portion of the offer the objection is made that any express notice to this defendant of any accumulation of ice at the mouth of the archway is unnecessary, because the evidence offered by the plaintiff reveals the fact that the ordinary use of the drain pipes by the tenants occupying the second story of the defendant's building would probably, during times of freezing weather, cause a dangerous accumulation of ice on the sidewalk near the entrance to the archway.

The Court: Objections sustained. Evidence excluded. Bill sealed for the defendant. [3]

We propose to prove by this witness and other witnesses, that for many years back, and from a time whereof there is no recollection to the contrary, it has been the general custom in the borough of Chambersburg to drain water from lots and roofs and waste pipes for domestic use in the houses of the borough, over and through uncovered surface drains across pavements, to the gutters, in the street, in the same manner as was done in the case on trial.

Mr. Sharpe: This is objected to because testimony as to what is usual and customary is not relevant to this issue. Even if other property owners in the borough of Chambersburg have been accustomed to keep their gutters and drains in an unsafe and negligent manner, such fact would not relieve the defendant from liability in this action.

2. The evidence is generally irrelevant and immaterial.

The Court: Objections sustained, evidence excluded. Bill sealed for the defendant. [4]

When Charles Beckley, a witness for defendant, was on the stand, the following offer was made:

It having been already shown in the testimony that this drain pipe was put in there about April 1, 1899, we propose to show by this witness that the accumulations of ice were there before this drain pipe was put there, during freezing weather.

Mr. Sharpe: The evidence is objected to as irrelevant and immaterial.

The Court: Objection sustained. Evidence excluded. Bill sealed for defendant. [5]

Mr. Gillan : We propose to prove by this witness that before this drain pipe was constructed, the conditions of things as to the ice, on the pavement and about the place where the accident is alleged to have occurred, were similar to those described by the witnesses for the plaintiff at the time the accident occurred, with respect to the ice. This to be followed by evidence that the drain pipe was at the time of the accident wholly disconnected with the waterworks of the house and that the condition of things with respect to the ice was the same after the drain pipe was no longer used as at the time of the accident, as has been described by witnesses for the plaintiff.

Mr. Sharpe : This offer is objected to as wholly irrelevant and immaterial.

The Court : Objection sustained. The evidence is excluded. Bill sealed for the defendant. [6]

We propose to prove by this witness and others that from a few days after the accident occurred and up to the present time, no water has ever passed down that drain pipe, and that no water has passed or could have passed from the premises of the defendant, and notwithstanding that fact, during freezing weather of the winter after the accident occurred and in the freezing weather of the winter of 1900 and 1901, there was constantly cakes of ice in that archway, from beginning to end, and out over the pavement.

Mr. Sharpe : The evidence is objected to, inasmuch as it would not show that the drain pipe of the defendant did not cause or contribute towards the accumulation of ice upon the pavement and around where the plaintiff had fallen.

Because the evidence is wholly irrelevant and immaterial.

The Court: Objection sustained. Evidence excluded, bill sealed for the defendant. [7]

When Daniel Minick, a witness called by the defendant, was on the stand, the following offer was made :

We propose to prove by this witness that the drain pipe which is alleged to have caused this accident was by him entirely disconnected from the waterworks in this house, and the water flowed in another direction out on the south side of the premises. That since the time that was done there was not and could not have been any water from the defendant's premises discharged into or through this archway. That both

prior to that time and since, all the water from adjoining premises on the north, both surface and drainage of the water flowing off the roofs, and the drippings from the hydrants, were discharged into this archway. That after this water of the defendant's premises had been turned off there were accumulations of ice in the archway, and out in the gutter, and on the pavement, similar to those described by the plaintiff's witnesses to have existed at the time of the accident.

Mr. Sharpe : This offer is objected to, because the evidence would not show or tend to show that the accumulation of ice upon which the plaintiff fell was not caused by the drain pipe or that the drain pipe did not contribute in some degree toward such accumulation.

The evidence is wholly irrelevant and immaterial.

The Court: Objection sustained. Evidence excluded. Bill sealed for the defendant. [8]

The court charged in part as follows :

[She had medical aid. She is not obliged to be an object of charity. That is to say, if you find she is entitled to recover from this defendant under the instructions we have given you as to the law of the case, and in the light of the evidence, then the mere fact that it does not appear from the evidence that she has not paid her medical aid will not prevent her from recovery in this case for what would reasonably compensate her physician. She should be entitled to recover that.] [9]

Defendant's points were as follows :

1. The plaintiff herself having testified that she could have seen the obstruction on the pavement if she had looked, but that she did not look, was guilty of contributory negligence, and she cannot recover. *Answer :* Refused. [10]

2. If the jury believe from the evidence that there was sufficient light to have enabled the plaintiff to have seen the obstruction, and if she had looked she would have seen it, and if they further believe that she could have avoided it by going around it, she was guilty of contributory negligence, in not passing around the ice, or in other words, she was bound to use her eyes in walking to ascertain the condition of the pavement and if she did not do this she was guilty of contributory negligence and cannot recover. *Answer :* Refused. [11]

3. It having been conclusively shown that the premises were
occupied by tenants and not by the defendant, it was the duty
of the tenants occupying the premises to keep the pavement
and sidewalk clear of ice, and there can be no recovery against
the defendant, it not appearing that he had either notice or
knowledge of the condition of the sidewalk.   *Answer :* Re-
fused. [12]

4. The proximate cause of the accident having been shown
to be the ice on the pavement, if there was any negligence, it
was in the failure to have the ice removed or to have it covered
with something that would prevent slipping.   The duty to do
this was upon the owner or occupant of the abutting property.
As the abutting property has been shown to be a property other
than that of the defendant, the defendant was guilty of no neg-
ligence which could have injured the plaintiff, and the plaintiff
is not entitled to recover.   *Answer :* Refused. [13]

Plaintiff's points were as follows :

1. If the jury believe from the evidence that the defendant
so constructed the drain pipe from the second story of his
building that the use of said pipe, for the purposes for which
it was intended, by the tenants occupying the second story
of said building, would probably cause during periods of freez-
ing weather a formation of ice upon the sidewalk at or near
the mouth of the archway, dangerous to passersby, and if the
jury believe further that the ice did form upon the pavement
near the mouth of the said archway, as a result of the water
discharged through said drain pipe, or that the water discharged
through said drain pipe contributed appreciably towards the
formation of such ice, and that such ice, so formed, wholly or
appreciably from the water discharged through said drain pipe
was dangerous to persons passing upon said sidewalk, and that
the plaintiff through no want of care on her part did fall in
consequence of the ice so formed, and sustained the injuries
testified to by her, the verdict should be for the plaintiff.   *An-
swer :* I affirm this proposition, but it is necessary that I should
explain it a little.   I could not affirm it unless I were to un-
derstand by " appreciable " a material contribution.   There is a
distinction between what is appreciable and what is material.
An appreciable contribution would be any discoverable contribu-
tion, one that could be estimated.   Liability does not result

from this without more.  By a material contribution I mean
a contribution so considerable that it would contribute to the
accident.  Miss Ludwig testified to the amount of water she
discharged down through that drain pipe the evening before
the accident.  My recollection is that it was some eight or ten
quarts.  You may very well regard that as a material contri-
bution.  I do not say you shall.  I say you may.  I mention
this simply to explain the distinction between an appreciable
and a material contribution.  I think her testimony was she
used eight or ten quarts of cold water that evening, and I do
not remember how much warm water she said she used.  With
this qualification I affirm the point.  [4]

2.  If the jury find for the plaintiff they should in estimating
the damages allow not only for the direct expenses incurred
by the plaintiff by reason of her injury, but also for the priva-
tion and inconveniences she has been subjected to, and for the
pain and suffering, bodily and mental, already experienced and
likely to be yet experienced, as well as for the pecuniary loss
she has sustained and is likely to sustain during the remainder
of her life from the injury resulting from the fall, and the dif-
ference it has occasioned in her earning capacity.  *Answer :* I
affirm this.  [15]

Verdict and judgment for plaintiff for $1,644.18.  Defendant
appealed.

*Errors assigned* were (1–8) rulings on evidence, quoting the
bill of exceptions ;  (9–16) various instructions.

*W. Rush Gillan,* of *Gillan & Gillan,* with him *J. A. Strite,*
for appellant.—When in a town or city an owner constructs
his pavements or sidewalks in accordance with the method
which is usual and ordinary, he is not guilty of maintaining a
nuisance.  If in the drainage of his premises he used the same
method adopted generally by every other owner and allowed by
the municipality he is not guilty of maintaining a nuisance :
King v. Thompson, 87 Pa. 369 ; McNerney v. Reading City,
150 Pa. 611 ; Borough of Easton v. Neff, 102 Pa. 474 ; Robb
v. Connellsville Boro., 137 Pa. 42 ; Seddon v. Bickley, 153 Pa.
271 ; Stackhouse v. Vendig & Co., 166 Pa. 582.

The plaintiff having offered no evidence whatever as to the

cost of her medical attendance, the court erred in using the language it did, quoted in the ninth assignment of error: Owens v. People's Pass. Ry. Co., 155 Pa. 336; Goodhart v. Penna. R. R. Co., 177 Pa. 14; McKenna v. Citizens' Nat. Gas Co., 198 Pa. 40.

The tenant always is, the landlord may under peculiar circumstances be, liable for injury sustained by a third person, arising from negligence: Bears v. Ambler, 9 Pa. 193; Wunder v. McLean, 134 Pa. 334.

Plaintiff was guilty of contributory negligence: Bruch v. Phila., 5 Dist. Rep. 718; Robb v. Connellsville Borough, 137 Pa. 42; Canavan v. Oil City, 183 Pa. 611; Haven v. Pittsburg, etc., Bridge Co., 151 Pa. 620; Harris v. Commercial Ice Co., 153 Pa. 278; Lumis v. Phila. Traction Co., 181 Pa. 268.

*J. L. Elder*, with him *Walter K. Sharp* and *Horace Bender*, for appellee, cited on the question of damages: McHugh v. Schlosser, 159 Pa. 486; McGarrahan v. New York, etc., R. R. Co., 171 Mass. 211; 50 N. E. Repr. 610; Lake Shore, etc., Ry. Co. v. Frantz, 127 Pa. 297.

Cited as to the liability of the defendant rather than his tenant: Reading City v. Reiner, 167 Pa. 46; Knauss v. Brua, 107 Pa. 88; Fow v. Roberts, 108 Pa. 491.

Cited on the question of contributory negligence: Easton Borough v. Neff, 102 Pa. 475; Erie v. Schwingle, 22 Pa. 384; Lower Macungie Twp. v. Merkhoffer, 71 Pa. 276; Pittston v. Hart, 89 Pa. 389; McLaughlin v. Corry City, 77 Pa. 113.

OPINION BY MR. JUSTICE MESTREZAT, April 21, 1902:

The defendant and Mrs. Effie O. Gilbert own adjoining lots on the east side of North Main street in the borough of Chambersburg. On these lots are erected two brick dwelling houses, between which is an archway from the property line to the rear of the buildings, about three feet wide and extending in height to the second story of the buildings. The archway is on the land of Mrs. Gilbert and is formed by the second story of the defendant's house projecting over the way to Mrs. Gilbert's building. The defendant had the right to use the archway. In April, 1899, he constructed a one and one quarter inch drain pipe from a sink in the second story of his house

to the archway by which the contents of the sink could be carried to and discharged upon the surface of the archway through which it flowed to the pavement, and thence in an open gutter over the pavement to the street. The water from the roof of the adjoining property was carried to the archway in a four inch pipe opening therein a short distance in the rear of the place where the waste water from the sink was discharged. The defendant did not live in his house but leased it to various tenants. Four rooms on the second floor, one extending over the archway, were rented and occupied jointly by two tenants engaged in the millinery business. The sink referred to was in one of these rooms and used by the occupants in disposing of the waste water " that would come from ordinary housekeeping."

The plaintiff is a woman of seventy-one years of age and at the time of the accident was, and for three years prior thereto, had been engaged as a chambermaid at the Montgomery hotel on North Main street, Chambersburg, a short distance south of, and on the same side of the street as, the defendant's property. She lived outside the borough and spent her nights at home. On leaving the hotel in the evening for her home she immediately crossed Main street and then entered an alley leading off the street. In returning to her work in the morning she usually came on King street to Main street and along the opposite side of that street from defendant's property to the hotel. Before daylight and in the early morning of December 30, 1899, the plaintiff in going to her work came up King street and, contrary to her usual custom, crossed to the east or hotel side of North Main street. She then proceeded along the footwalk on that side of the street until she came in front of the archway where, stepping on some ice, she fell and was seriously and permanently injured. There was no ice on the pavements between her home and the archway. She says it had been a good while prior to the time of the accident since she had passed over the pavement in front of the archway. The testimony of the plaintiff showed that on the morning of the accident there was a continuous ridge of ice extending from the mouth of the archway across the pavement to the curb. In the center of the ridge it was from three to five inches thick and sloped to the sides. It is claimed by the

plaintiff and her evidence tended to show that this accumulation of ice was produced by the water which passed through the defendant's drain pipe and thence through the archway to the pavement where it froze. This action was brought by the plaintiff to recover damages for the injuries she sustained by the alleged negligence of the defendant in causing the pavement to be obstructed by ice. She avers that the defendant "did so negligently and carelessly construct, keep and maintain the buildings on his said lot of ground erected and the pipes, drains and gutters in, upon and about the same in such manner that large quantities of waste water, drainage and water from rain and melting snow and ice were discharged over and upon the said pavement and became frozen thereon so that it obstructed the same and rendered it dangerous and unsafe to persons passing upon and using the said pavement."

The trial in the court below resulted in a verdict and judgment for the plaintiff and the defendant has appealed. The first, fifth, sixth, seventh and eighth assignments allege error in the court in rejecting evidence of the defendant offered for the purpose of showing the condition of the premises before and after the accident. Portions of some of these offers might have been admissible, but contained in an offer with other incompetent matter were properly excluded. The learned trial judge was right in excluding the offers to which these assignments relate. The liability of the defendant arises from the condition of the premises at the time of the accident. This could not be shown by their condition prior or subsequent to that time. It may be as the defendant offered to show, that the surface water flowing through the archway from the rear of the building produced ice on the pavement the winter before the accident, and that this condition of the pavement existed before the drain pipe had been constructed and after it had been removed. But conceding these allegations to be true they do not meet nor tend to disprove the averments of the plaintiff supported by her testimony that the ice on which she fell or a material part thereof was formed by the water which came from the drain pipe leading to the archway from the kitchen on the second floor of the defendant's building. The evidence of the plaintiff shows that a quantity of water had been discharged through the drain pipe the evening before the accident by the

occupants of the defendant's premises, and that that water had produced the accumulation of ice on which the plaintiff fell. In addition to this, there was testimony that on the occasion of the accident there was no ice back of the drain pipe, but that it extended from the mouth of the drain pipe in the archway to the pavement. This was the issue which the defendant was called upon to meet, and evidence offered by him that ice on the pavement a year previous or at a time subsequent had accumulated from other causes would not negative the proposition of the plaintiff's averment. On former and subsequent occasions when the drain pipe was not in use ice could have formed on the pavement at this point from water coming from the hydrants and the roofs of the houses or from surface water collected in the rear of the buildings and carried to the pavement through the archway as claimed in the defendant's offers, but that fact of itself would not show nor tend to show that water from another source might not have been discharged on the pavement and formed the ice which caused the plaintiff's injuries. In the absence of evidence that water did flow to the pavement from other sources than the drain pipe, it cannot be presumed that water from such source did produce the ice on the occasion of the accident. After affirmative evidence of the fact on the part of the plaintiff, it was incumbent upon the defendant to show that the plaintiff was not injured by ice that had accumulated from water discharged through the drain pipe, and his offers, if admitted, would not have aided the jury in arriving at such a conclusion.

The second, third and fourth assignments complain of the court's refusal to admit testimony to show that in the borough of Chambersburg it is customary to drain water from lots, roofs and waste pipes for domestic use in the houses of the borough, over and through uncovered drains across pavements to the gutters in the street, in the same manner as was done in the case on trial. The learned trial judge very properly sustained the objection to the offers and excluded the testimony. In support of these offers the learned counsel for the defendant cite King v. Thompson, 87 Pa. 369. There it was held that an opening in the sidewalk such as is usual in a city for the purpose of light and ventilation to a dwelling, is not per se a nuisance. The second point for charge, the refusal of which was held to

be error, requested the court to instruct the jury that the defendant was not guilty of negligence or nuisance in maintaining an opening in the pavement if such opening was not only usual and customary in Allegheny city for lighting and ventilating cellars but also was reasonably necessary for those purposes. In the opinion it is said that if it was customary time out of mind for property holders to have such opening and " if reasonably necessary for light and ventilation, the property owner is not chargeable with negligence for placing and keeping it there." In the case at bar, the offers did not propose to show nor would it even be pretended that the ice bank in question was necessary for any legitimate or lawful purpose; nor was it suggested in the offer that running water from the lots, roofs and waste pipes over uncovered drains across pavements was a necessary, or the only practicable, way of disposing of such water. There is no averment by defendant that any necessity existed for using the pavements of the borough of Chambersburg for carrying to the gutters along the streets surface or waste water or water that might have flowed from the roofs of houses. It is therefore apparent that had the testimony been admitted it would have disclosed the single fact that the custom of the people of the borough was to conduct the water from the premises on the pavement and permit it to congeal there which was negligence, resulting in a nuisance, dangerous and unsafe to all who had occasion to use the streets. Regardless therefore of any necessity for thus disposing of the surface water by the property owners, the ice permitted to form in front of the archway and on which the plaintiff fell was, as shown by plaintiff's testimony, a public nuisance and in the language of the court in McNerney v. Reading City, 150 Pa. 614, neither the lapse of time nor the existence of like nuisances elsewhere, with the consent of the municipality, will legalize it. Obstructions on the footwalks of the streets of a municipality, whether created by the accumulation of ice or otherwise, except such as are temporarily permitted for a lawful purpose, are a nuisance, and the party responsible therefor is liable to the individual injured by his illegal act. The public have a right to the use of the street in the condition in which the municipality has left it, and no person whether an adjoining owner or not is justified in placing or permitting an obstruction thereon which

renders it dangerous or insecure. The custom of the citizens or the acquiescence of the municipality will not excuse such conduct.

What has just been said applies to and disposes of the thirteenth assignment of error.

The jury was properly instructed on the question of the plaintiff's contributory negligence, raised by the tenth, eleventh and sixteenth assignments of error. Whether she exercised due care in approaching the place of the accident was, under the facts disclosed by the testimony, for the jury.

In the twelfth and fourteenth assignments the defendant denies his liability in this action because his house was, at the time of the accident, occupied by tenants who used the sink and drain pipe which carried the waste water to the archway. In support of his position the defendant contends that it was the duty of the tenant to use the premises so as to injure no one, and to remove the ice and snow from the pavement. We are not here concerned with the duty and liability of the tenant to the plaintiff. It may be that the tenants who put the waste water in the drain pipe were liable to the plaintiff, but that fact does not relieve the defendant in this action. After purchasing the property, he constructed the sink and drain pipe for the purpose of carrying the waste water from the rooms in the occupancy of his tenants to the archway, with a knowledge that it would flow thence on the pavement. The condition of the building was therefore attributable to the act of the defendant and not to that of the tenant, and its use by the latter was in conformity with the defendant's intention when he leased the premises. "We do not doubt," said GORDON, J., in Knauss v. Brua, 107 Pa. 88, "but that, in the absence of an agreement to repair, the landlord is not liable to a third party for a nuisance resulting from dilapidation in the leasehold premises whilst in the possession of a tenant. To make the lessor so liable the defect must be one that arises necessarily from a continuance of the use of the property as it was when the tenant took possession of it. But the converse of this proposition is also true; if the premises are so constructed, or in such a condition, that the continuance of their use by the tenant must result in a nuisance to a third person, and a nuisance does so result, the landlord is liable." To the same effect are Fow v. Roberts, 108 Pa.

489, Wunder v. McLean, 134 Pa. 334, and Reading City v. Reiner, 167 Pa. 41.

The ninth and fifteenth assignments allege error by the court in holding that the plaintiff was entitled to recover damages for expenses incurred for medical services rendered by her physicians. There was no evidence showing the amount of money expended for these services, nor what the services were reasonably worth. The learned trial judge, however, held that in estimating the damages the jury should allow for the direct expenses incurred by the plaintiff by reason of the injury, and instructed the jury that " the mere fact that it does not appear from the evidence that she has not paid her medical aid will not prevent her from recovering in this case for what would reasonably compensate her physicians." It is quite true as the learned judge suggests, that the fact that the plaintiff had not paid her physician would not prevent her recovering the value of his services. But that is not the question. In the absence of any evidence of the value of such services or of what they are reasonably worth, was the plaintiff entitled to recover anything on account thereof? It seems to us rather singular that when the physicians who rendered these services were on the witness stand and detailed the character and extent of their services, they were not interrogated as to their value. It is contended by the learned counsel for the plaintiff that in the light of their testimony " the average jury from their own experience could estimate with considerable accuracy what would be reasonable compensation." We cannot assent to this proposition. On the contrary the average juryman is not a professional man, and is not presumed to know the value of such services. What would have been reasonable compensation for the medical services rendered the plaintiff might have been shown by the physicians who attended her or by others who were acquainted with the value of similar services in the community in which they were rendered. It was incumbent on the plaintiff before she could recover from the defendant compensation for medical aid to furnish the jury evidence from which they could determine what had been paid for such services or such amounts as the services were reasonably worth. Failing in this, there was no basis on which the jury could estimate or intelligently determine this element of the plaintiff's damages. A verdict should be

supported by legal evidence, otherwise it is the result of the whim, caprice or guess of the jury. This is not permissible under our jury system.

It follows that the ninth and fifteenth assignments of error must be sustained. The judgment is reversed and a venire facias de novo is awarded.