## 10292

### ILDERTON v. CHARLESTON CONSOL. RY. CO.

#### (101 S. E. 282.)

1. CONTINUANCE—ABSENCE OF WITNESS.—A party ought not to be compelled to go to trial in the absence of the only witness by whose testimony he can make out his action or defense, unless it appears that he has been guilty of negligence in procuring the attendance of such witness or in obtaining his testimony.

2. CONTINUANCE—ABSENCE OF WITNESS.—Where defendant, on discovering that the only witness by whose testimony it could make out a defense was in the army and would probably be sent over seas, took steps to procure his testimony, and was defeated in doing so by fact that witness was ordered away sooner than was expected, and where at time of trial, witness was expected to make an early return, the Court's refusal to grant continuance for absence of witness *held* error.

3. INDEMNITY—CONCLUSIVENESS AS TO ONE NOT PARTY TO RECORD.—Where motorman for whose negligence action was being brought against the street railway had knowledge of such action and had promised to testify thereat though not a party of record, judgment against the railroad would be conclusive as to amount railroad had been required to pay in railroad's action against motorman for his liability over and would be *prima facie* evidence of motorman's liability to railroad therefor.

4. ARMY AND NAVY—REFUSAL OF CONTINUANCE AS AFFECTED BY SOLDIERS' AND SAILORS' RELIEF ACT.—Refusal to continue action against street railroad for negligence of motorman, where motorman was the only witness by which railroad could make out a defense, and, though having knowledge of action and having promised to testify, could not be present at the trial because engaged in military service in France, was violative of motorman's right under Soldiers' and Sailors' Relief Act of March 8, 1918; such action affecting motorman's liability over to railroad.

5. APPEAL AND ERROR—REFUSAL OF CONTINUANCE.—Everything that was pressed on the Court's attention as ground for continuance is brought up by the exception assigning error in the refusal of continuance.

Before DEVORE, J., Charleston, Spring term, 1919. Reversed and new trial granted.

Action by Robert F. Ilderton, Jr., by his guardian *ad litem,* Robert F. Ilderton, against the Charleston Consolidated Railway & Lighting Company. Judgment for plaintiff, and defendant appeals.

*Mr. W. Huger FitzSimons,* for appellants, submits: *Admission that witness would testify as stated in affidavit did not justify the trial of the case:* Rule 27 of the Circuit Court; Civil Code, sec. 3987; 83 S. C. 193; 76 S. C. 144; 30 Am. Dec. 688 (Ky.) ; 68 S. C. *Discretion of the Court must be guided by law and cannot be exercised in the denial of a plain legal right:* 68 S. C. 35; 15 S. C. 328.

*Messrs. Logan & Grace,* for respondent, submit: *It was not an abuse of discretion for the Judge to order the suit to be tried:* 110 S. C. 259; 96 S. E. 530; 88 S. C. 384; 42 S. C. 209 (citing 33 S. C. 106) ; 33 S. C. 275; 4 Strob. 61, 25, 122; 29 S. C. 581; 89 S. C. 190; 82 S. C. 236; 64 S. C. 144; 98 S. C. 144.

November 28, 1919.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

The only question made by this appeal is: Did the trial Judge err in refusing defendant's motion for a continuance, based on the following circumstances? The action was for damages for personal injuries, to plaintiff, caused by defendant's trolley car, operated by Robert O'Quinn, as motorman. The delicts alleged were solely those of O'Quinn, who was in the United States army in France at the time of the trial.

The accident occurred in April, 1917. The action was brought in June, 1917, and docketed for trial at the next April term, 1918; but it was not reached until the January term, 1919, when it was tried.

One of defendant's attorneys made affidavit that at the April term, 1918, which was the first term at which the case could have been tried, he learned that O'Quinn was a soldier at Camp Sevier, and that it would not be possible to secure

his attendance at Court; that he immediately took steps to have his deposition taken, and, by agreement with plaintiff's attorneys, it was to have been taken on May 7th; but on May 4th O'Quinn's regiment was ordered to leave, and did leave, for France, and, since that time, it had been impossible to procure his testimony; that he was defendant's chief and practically its only witness, and also practically a defendant in the case; that O'Quinn had told defendant's attorneys that he would testify that the accident was unavoidable, that he was running the car slowly and carefully, and had given signals of its approach, but plaintiff ran from the sidewalk in front of the car so suddenly and so close to it that it was impossible for him to stop the car in time to prevent the accident, although he made every effort to do so; that affiant had been informed and believed that O'Quinn's division (the Thirtieth) had been ordered home, and that he would be back in time to appear and testify at the next term, in April, 1919.    In other respects the affidavit complied with rule 27 of the Circuit Court, as to motions for continuance.

Robert M. O'Quinn, the father of the absent soldier, made affidavit that his son had told him that the charge made against him in the complaint—that he had negligently and wilfully run over plaintiff—was unjust and untrue, and asked that his son be given an opportunity, in his own behalf, as well as in behalf of defendant, to appear and testify; that he had heard from him since the armistice, and he was well and hoped to be home soon; and that he had been informed and believed that his division had been ordered home, and he knew that, as soon as he returned, he would appear and testify in the case.

Plaintiff's attorneys announced that they would admit that, if O'Quinn were present, he would testify as stated in the affidavit of defendant's attorney.    Thereupon the case was ordered to trial.    At the conclusion of plaintiff's testimony, defendant announced that it had no testimony and offered none.

After the jury had been out for some time, they came into Court, and the following colloquy took place:

The Foreman: There is considerable feeling among the jury in regard to the motorman, who is absent. They would like to have your Honor's ruling as to whether, in bringing in a verdict, it would in any way incriminate this motorman, or leave him subject to a suit.

The Court: The motorman has nothing to do with this suit. He is not a party to it. Nothing that you do here would bind the motorman, because he is not a party to the suit, and your action would not bind him any more than it would bind me.

Thereafter, the jury returned a verdict for plaintiff for $5,000 actual damages, and judgment having been entered thereon, this appeal was taken.

Our decisions all show that this Court has always been reluctant to interfere with the exercise of discretion by the trial Judge in the matter of continuances. But we have often said that, in exercising discretion, Courts must be guided by law, and that discretion may not be exercised so as to deprive a litigant of a substantial right, except for good and sufficient reasons.

This case presents a twofold aspect: First, as to the rights of the defendant of record; and, second, as to those of the absent witness. Considered from the standpoint of the rights of the defendant, the circumstances were exceptional. The situation of defendant arose out of circumstances over which it had no control. Of course, such circumstances may operate to deprive a party of the testimony of the only witness by whom his action or defense can be established, as in the case of the death of such witness. But here it was only a temporary absence of the witness, whose presence could have been had at the next term of the Court, which would have caused a delay of only three or four months at most. A party ought not to be compelled to go to trial in the absence of the only witness by

whose testimony he can make out his action or defense, unless it appears that he has been guilty of negligence in procuring the attendance of such witness, or in obtaining his testimony.

It appears that, as soon as it was discovered that O'Quinn was in the army, and would probably be sent overseas, defendant took steps to procure his testimony, and was defeated in doing so by the fact that he was ordered away sooner than was expected. Up to that time, it can hardly be said that defendant was lacking in diligence, for, no doubt, it had every reason to believe that O'Quinn could and would be present at the trial, as he had promised. Considering all the circumstances, and the great disadvantage to a litigant which almost necessarily arises from the absence of so important a witness, and the short delay that would have been caused, we think defendant's motion ought to have been granted.

It is said that *Barnes v. Railroad Co.*, 110 S. C. 259, 96 S. E. 530, is a stronger case than this, because there the absent witness was a party defendant of record. But he had testified at a previous trial and had been examined and cross-examined, and his testimony had been taken stenographically and was available to the defendants. Moreover, it appeared from his testimony, at the first trial, that he knew nothing whatever of the details of plaintiff's injury. He was engineer of the train from which plaintiff had been thrown by a sudden jerk of the train, while he was getting off, after the station had been called; but the engineer did not know that plaintiff had been injured until he was informed of it by a telegram, received at the next station.

The only charge made against him was that he had negligently caused the sudden movement of the train, which he denied as fully at the first trial as he could have at the second. Besides, he was not the only witness for the defense, even upon that point. The conductor, brakeman, and others knew the facts as well as he did, and testified upon the same

point.    Therefore, under all the circumstances, we conclude that the defendants were not prejudiced by the absence of the witness.

But, notwithstanding these differentiating facts, the Court said, "This exception gives us some trouble," showing that it was not without some degree of hesitancy that the ruling below was sustained.    This must not be taken as intending to cast any doubt upon the correctness of that decision, but merely as showing that the Court regarded the ruling of the Circuit Court as being very near the border line of error.

We come now to view this case from the standpoint of the rights of the absent witness, O'Quinn, who, though not a party on the record, was deeply interested in the event of the action; for, as defendant's liability to plaintiff was predicated solely upon his conduct, his liability over to defendant will be affected by the judgment.    *Logan v. Ry.,* 82 S. C. 518, 64 S. E. 515; *Jones v. Ry.,* 106 S. C. 20, 90 S. E. 183.

Although O'Quinn was not a party of record to this action, he had been notified of it, and had promised to give evidence in support of the defense.    That being so, it follows that the judgment, if allowed to stand, will affect his rights in an action by the defendant against him for his liability over to defendant for the damages which defendant will be compelled to pay on account of his alleged negligent acts and omissions.

In *Logan v. Ry., supra,* the writer stated his conclusions upon this point, from an examination of the authorities, in an opinion on Circuit, which was affirmed by this Court, as follows:

"The authorities generally agree that, when the principal is sued for the act of his agent, he can vouch the agent to defend, by giving him notice of the action and an opportunity to defend, and if the agent fails to defend, or if judgment goes against the principal, the agent will be concluded by the

judgment; and all agree that the judgment would be con-
clusive as to the amount which the principal had to pay, and
*prima facie* evidence of the liability of the agent to his prin-
cipal therefor. But the conclusive effect of the judgment
depends upon notice of the pendency of the action and an
opportunity to defend it"—citing authorities.

In addition to the authorities cited in Logan's case, see,
also, *Chicago v. Robbins,* 2 Black 418, 17 L. Ed. 298, and
same case, on second appeal, in 4 Wall. 657, 18 L. Ed. 427,
and *Oceanic Steam Navigation Co. v. Compania Transat-
lantic Espanola,* 134 N. Y. 461, 31 N. E. 897, 30 Am. St.
Rep. 685, and same case, on second appeal, in 144 N. Y.
663, 39 N. E. 360, which fully sustain the conclusion stated
in Logan's case.

It follows that his Honor was in error in thinking that
the judgment in this case would have no effect whatever
upon the right of O'Quinn. And from this it appears that,
in exercising his discretion, he was influenced by error of
law.

Having shown that O'Quinn's rights may be affected by
the judgment, it follows that the case came within the pro-
tection afforded to soldiers and sailors by the act of
Congress, known as the Soldiers' and Sailers' Relief
Act, approved March 8, 1918, which provided for the
temporary suspension of legal proceedings "which may prej-
udice the civil rights" of soldiers and sailors during the war.

It is said, however, that the rights of O'Quinn under this
act are not before us. We think they are. It was clearly
brought to the attention of the Court that he was a soldier
in the service of the United States in France, that he
had been notified of the action and had promised to
appear and testify in behalf of the defense, and that
he was practically a defendant in the case. It was so
strongly pressed upon the Court in the presence of the jury
that it influenced them to ask the question which they did,

and, of course, everything that was pressed upon the attention of the Court as ground of continuance is brought up by the exception assigning error in the refusal of the continuance.

It has been suggested that it is not probable that defendant will sue O'Quinn on his liability over, if the judgment be affirmed. Courts decide cases according to the legal rights of the parties, and not according to the probability or improbability of their exercising such rights.

It has been suggested, also, that, if the defendant should sue O'Quinn, the act of Congress would be a perfect shield to him against any effect which the judgment might otherwise have had. The answer is, in that event, an injustice would be done the defendant in denying to the judgment the force and effect which defendant is entitled, as of right, that it shall have in such an action; and that result would show that defendant's rights were prejudicially affected by proceeding with the trial in the absence of O'Quinn.

For the foregoing reasons, we think the judgment should be set aside and a new trial granted, and it is so ordered.

MR. CHIEF JUSTICE GARY and MR. JUSTICE FRASER concur.

MESSRS. JUSTICES WATTS and GAGE, *dissenting.* We think the Court was right to tell the jury that the verdict could not affect O'Quinn; that was the issue presented to him and on which he ruled.

We think, also, that the case is so like Barnes' case, 110 S. C. 259, 96 S. E. 530, as not to be substantially different from it.

We, therefore, dissent.