## HRABAK v. HUMMEL.

No. 2342.

District Court, E. D. Pennsylvania.

Sept. 30, 1943.

Herbert Welty and Philip A. Campbell (of Frey & Campbell), both of Philadelphia, Pa., for plaintiff.

Ward C. Henry (of Swartz, Campbell & Henry), of Philadelphia, Pa., for defendant.

BARD, District Judge.

This was an action for personal injury sustained by plaintiff when struck by a motor vehicle allegedly belonging to the Monark Motor Freight System, Incorporated, and being operated upon its business. At the time of trial Monark was in bankruptcy and the trustee in bankruptcy was substituted as the defendant of record. The plaintiff sustained serious and permanent injuries for which the jury rendered a verdict in his favor in the amount of $12,500. The defendant has filed motions to set aside the judgment and to enter judgment in his favor or for a new trial.

At the outset there is presented by defendant the question of the propriety of the denial of its application for a continuance based upon the Soldiers' and Sailors' Civil Relief Act of 1940.[1] When this case was first listed for trial defendant applied for a continuance on the ground that William E. Ginther, the driver of the Monark truck at the time of the accident and an essential witness, was in the military service of the United States. Judge Kirkpatrick granted the application for a continuance, but advised the defendant to attempt to take the deposition of Ginther, and ordered the case to be tried when it next appeared on the trial list. At Judge Kirkpatrick's suggestion a stipulation was entered into for the taking of the deposition of Ginther, the defendant reserving its right, however, to apply for a further continuance on the basis of the Soldiers' and Sailors' Civil Relief Act of 1940.

At the present listing of the case for trial defendant's application for a continuance was denied. The deposition of Ginther had in the interim been taken and was subsequently offered and received in evidence

[1] Act of October 17, 1940, c. 888, 54 Stat. 1178, 50 U.S.C.A. Appendix, § 501 et seq.

during the course of the trial. Defendant contends that under the terms and spirit of the Soldiers' and Sailors' Civil Relief Act it was error to proceed with the trial.

This contention merits serious consideration. If the trial of the case against this defendant prejudices the rights of its former employee while in the military service of the United States, defendant's application should certainly have been granted. Unless such prejudice appears, however, the defendant should not be permitted to acquire vicarious shelter under the Soldiers' and Sailors' Civil Relief Act, especially where, as in the present case, the original defendant is in bankruptcy and plaintiff's claim for the serious injuries he sustained may be indefinately postponed, or indeed lost, if the matter is to be continued for the duration of Ginther's military service.

The principal argument advanced by the defendant is that since the injury to plaintiff was determined to have resulted from the negligence of Ginther as its employee, Ginther is liable over to it as his employer for the amount of the loss it thereby sustained and that therefore his rights have been seriously prejudiced. In support of this contention defendant cites Ilderton v. Charleston Consol. R. & Lighting Co., 113 S.C. 91, 101 S.E. 282, which was decided on the basis of the Soldiers' and Sailors' Relief Act of 1918, and in which it was held that the trial court erred in denying an application for continuance in a suit against a street railway company based on the negligence of its motorman who was in the military service at the time of the trial. In that case, however, the testimony of the employee was not taken and the defendant was obliged to present its defense without his testimony. The court held that the defendant was seriously prejudiced in presenting its defense by the absence of the testimony of the motorman and that the trial should therefore have been continued. In its opinion it also considered the effect of the trial on the rights of the motorman who was in military service and stated that he too was prejudiced by reason of the fact that he would be liable over to his employer for damages it sustained as a result of his negligence in the course of his employment. To the contention that suit by the employer against the employee was highly unlikely, the court stated that such probability could not be considered, and to the argument that the rights of the employee could be amply protected in the event of such a suit, the court said that such protection would be at the expense of the defendant.

Regardless whether this reasoning is convincing, there is a most significant factual distinction between the Ilderton case and the case at bar. In that case the defendant was obliged to present its defense without any testimony by the employee whose negligence was alleged to have been the cause of the accident. The absence of a material witness whose testimony is unavailable is generally deemed to be sufficient ground for continuance of a trial. In the case at bar, however, the testimony of the employee had been taken by deposition and was introduced in evidence and considered by the jury. The only prejudice to the defendant was its inability to have the witness present in court to testify in person and to hear and directly rebut any testimony of the plaintiff with which he did not agree. This, in my opinion, did not sufficiently materially prejudice the rights of the defendant to require a continuance of the trial for the duration of the military service of the driver of the truck.

The foregoing discussion, however, does not bear directly on the question of the prejudice to the driver himself and the protection to be afforded him under the Soldiers' and Sailors' Civil Relief Act of 1940. Defendant contends that since an employee is bound to indemnify his employer for damages the employer is compelled to pay a third party as a result of the employee's negligence, the rights of Ginther, its driver, are adversely affected by the verdict and judgment in favor of the plaintiff in the instant case. It may be noted that no appeal has been made by Ginther for the protection of his own rights in this respect. The judgment against the employer would not be conclusive on the employee as to the existence or extent of liability unless the employer gave him reasonable notice of the suit and requested him to defend it or to participate in its defense. Restatement of Judgments § 107. Assuming that any such notice was given or request made—there being nothing in the present record on this matter—the Soldiers' and Sailors' Civil Relief Act of 1940 would preclude it from adversely affecting the rights of the employee who was in service at the time of the trial. This question will arise only in the event the present defendant at some future time should sue Ginther and seek to make the

judgment against it in this action binding upon him as to liability and as to the amount of damages. Under such circumstances Ginther will be entitled to the protection of the Act to the extent that it appears that he was prejudiced by not attending the present trial and defending the action. That this might be somewhat prejudicial to the defendant's right over against Ginther as suggested by the South Carolina Court in the Ilderton case is not, in my opinion, controlling in this case. Defendant, in the event that it does ever seek to be indemnified by Ginther, will by no means be precluded from establishing its rights to such recovery. It will at worst be deprived of the conclusive effect the judgment in the present action might have had if Ginther had been notified and had appeared to participate in the defense of this action. The prejudice to plaintiff, a man sixty-three years of age at the time of the accident, by an indefinite postponement of the trial of this case would as a practical matter be far more substantial. I am therefore of the opinion that the denial of the application for a continuance was a proper exercise of the court's discretion.

Defendant further contends that plaintiff's testimony as to the happening of the accident was so full of inconsistencies and contrary to the testimony of disinterested witnesses that the verdict should not be permitted to stand. The accident occurred when plaintiff, a pedestrian, was struck as he was crossing a street at an intersection, in Philadelphia, at nighttime. His testimony was that the traffic light was in his favor and that he was past the middle of the street when he was struck. Defendant concedes that this testimony, if accepted, would justify the jury's verdict, but contends that it cannot be accepted. I am not convinced that the evidence in this case was of such character as to remove it from the operation of the general rule that it is for the jury to determine the facts.

Prior to the accident plaintiff was employed as an attendant at a hospital at a salary of $42 a month plus room, board and laundry. Defendant's sixth reason for a new trial contends the court "erred in charging the jury as to the measure of damages to be recovered by the plaintiff in connection with his earnings prior to the accident, there being no competent evidence offered by the plaintiff as to the reasonable value of the board, lodging and allowance for laundry alleged to have been part of the wages received by the plaintiff."

After instructing the jury that if their verdict is for the plaintiff he would be entitled to recover for loss of wages, and telling them that his wages were $42 a month plus room, board and laundry, I said further: "No evidence has been introduced as to the value of his meals, or his room, or his laundry. As reasonable men and women, however, it is your duty to ascertain from the evidence what his total wages would be in cash, and, if you find for the plaintiff, to compute his wages from September 22, 1941 until today, and add that to your award."

Board, lodging and laundry are matters fully within the knowledge and experience of all, and the value of them is not a subject in which jurors need the aid of expert testimony.

They differ from the value of medical services. As to the value of medical services, the Supreme Court of Pennsylvania said in Brown v. White, 202 Pa. 297, at page 312, 51 A. 962, at page 965, 58 L.R.A. 321: "It is contended by the learned counsel for the plaintiff that, in the light of their testimony, 'the average jury, from their own experience, could estimate with considerable accuracy what would be reasonable compensation.' We cannot assent to this proposition. On the contrary, the average juryman is not a professional man, and is not presumed to know the value of such services. What would have been reasonable compensation for the medical services rendered the plaintiff might have been shown by the physicians who attended her, or by others who were acquainted with the value of similar services in the community in which they were rendered."

Conversely, everyone is familiar with the cost and value of the necessaries of board, lodging and laundry and what better function could a jury perform than applying its judgment "as reasonable men and women", as instructed, to the problem of fixing the value of these things under the circumstances of this case. Members of a jury are entitled to appraise testimony as to matters with which they have had everyday common experience.

I think the submission of this evidence was proper, but if it be error, it affects principally only the extent of his loss of earnings from the date of the acci-

dent, September 22, 1941, to the time of the trial, February 18, 1943, a period of 17 months, and may be cured by a reduction of the verdict in an amount sufficient to overcome the maximum amount the jury may have awarded under this charge.

In Fougeray v. Pflieger, 314 Pa. 65, 170 A. 257, 258, citing Brown v. White, supra, where the value of a physician's services had not been proved, Mr. Justice Schaffer said: "Under the circumstances we conclude that it is not necessary to award a new trial, but that there must be a further reduction of $540 in the judgment * * *."

Considering the amount of the verdict to compensate him for the serious and most likely permanent injuries, for his pain and suffering, for his required and extensive medical and hospital treatment, for his loss of future earning power, and for loss of his salary of $42 a month plus room, board and laundry, I cannot believe that the jury allowed him in excess of $100 per month for the value of his room, board and laundry. A reduction of at least $1,700 in the verdict for these items should certainly cure any error that may have been committed in this respect.

■ With respect to loss of earning capacity as distinguished from loss of earnings, past earnings are only one of the factors to be taken into consideration, and other factors are a plaintiff's age, condition, station in life, occupation, health and surroundings, Wolf v. C. Schmidt & Sons Brewing Co., 236 Pa. 240, 84 A. 778, and may be determined even in the absence of testimony as to plaintiff's earnings prior to the accident, Riddel v. Lyon, 124 Wash. 146, 213 P. 487, 37 A.L.R. 486.

■ The defendant's seventh reason for a new trial urges that the court "erred in submitting to the jury the claim in behalf of the plaintiff for charges for nursing, there being no evidence offered by the plaintiff as to the reasonable value of such services alleged to have been rendered in behalf of the plaintiff by his sister, Mrs. Mary Carr." Mrs. Carr testified as to the dates she rendered nursing services to the plaintiff and described the nature of her services. The witness testified that she kept a record of every day she lost at the mill in which she worked and had made a computation of her loss of wages. Plaintiff's attorney asked her what her wages were at the knitting mill, to which defendant's counsel objected. The court sustained the objection and said he would allow her to testify what her services were worth to plaintiff. The following then took place:

"Q. How much have you charged your brother, the plaintiff in this case, for the nursing that you gave him during all that time?

"Mr. Henry: I will have to object to that.

"The Court: Objection overruled. I will allow her to answer that.

"The Witness: $610.00."

Further questioning elicited the information that this sum included the amount for nursing and the money she expended for the plaintiff for medicine and for taxicabs which it was necessary for the plaintiff to employ to go to the hospital from time to time for treatment. This testimony showed that her total charge for nursing was $567. Later, plaintiff offered in evidence a memorandum showing that she had expended $35 and that she made a claim for nursing of $567. Defense counsel then objected and said that he had no objection to the $35 expenses. The following took place:

"By The Court:

"Q. And the $567 for nursing, that is what you feel is a fair amount for the care and nursing services you rendered to him. A. Your honor, I didn't put half of what my services was to him.

"The Court: You don't need to explain to me. Just answer my question.

"The Witness: Yes, I do, I really do.

"The Court: All right."

The objection was overruled and the computation admitted.

In my charge to the jury on this phase I said: "She had been employed at a mill prior to the accident, but since that she had to stop work, and was at home, and furnished board and lodging to the plaintiff, and made no charge for that, but she has submitted a charge for her nursing and the care of the plaintiff at the time he was at her home, and also for expenses that she was forced to pay, such as taxicab fees, and whatever other expenses may appear in the bill, all of which she said was due to the plaintiff's injuries. The bill she submitted was $35 for expenses that she paid and $567 for nursing, or a total of $602.00."

In view of her testimony that the reasonable value of her services in nursing plain-

780

tiff was considerably more than claimed by her on the memorandum of computation admitted into evidence, I do not think defendant suffered any prejudice. Defendant contends the memorandum was objectionable as an exhibit because it was based on her loss of wages rather than on her services as a nurse. The memorandum at the head of the column carries these words, "Cost of care per week", and then at each weekly figure carries the words, "Lost of work". Granting a possibility of prejudice by this ruling, the error could not have affected the verdict in more than the amount of $567 and can therefore be cured by a reduction of the verdict to this extent.

I think the trial was fair and the verdict of the jury amply justified on the evidence. For the reasons mentioned, however, and to remove every possible doubt of prejudice that the defendant may have suffered I shall direct the verdict to be reduced from $12,500 to $9,500.

Upon the plaintiff filing a remittitur of so much of the verdict as is in excess of $9,500, the defendant's motions for a new trial and to have the verdict and judgment set aside, will be denied; otherwise the motion for a new trial will be granted.