## 17437

Hoyt GRAHAM, Sr., Respondent, v. GREENVILLE CITY COACH
LINES, Appellant

(104 S. E. (2d) 72)

*Messrs. Rainey, Fant, Traxler & Horton,* of Greenville,
*for Appellant,*

*Herman E. Cox, Esq.,* of Greenville, *for Respondent,*

June 9, 1958.

PER CURIAM.

This is an appeal from a money judgment for alleged loss of salary which resulted from discharge from employment.

The plaintiff was a bus driver whose employment by the defendant was governed by a contract of the latter with the Brotherhood of Railway Trainmen, of which plaintiff was a member. It provides that when an employee is suspended or discharged he will be notified in writing within seventy-two hours of the precise charges against him whereupon he may demand a hearing upon the charges. The complaint alleged that plaintiff was not informed of the charge against him which occasioned his suspension or discharge at the close of the working day of February 18, 1957, whereby he had lost salary in a stated amount.

The answer of the defendant admitted, in effect, the existence and the terms of the labor contract as alleged in the complaint and alleged that plaintiff was discharged for cause, written notice of which was given to him, and he had made

no demand for hearing as required by the contract; and that the contract provides for arbitration of disputed discharges which is thereby the exclusive method for the determination of disagreements arising out of discharges.

The case was the thirteenth on the trial roster, prepared by the Bar for the term of court convening on November 11, 1957. When the roster was sounded upon the opening of court on that date it developed that all of the first twelve cases had been settled or were not for trial. The attorneys for plaintiff and defendant in this thirteenth case were not ready for trial on that day but they announced that they would be ready on the following day. Counsel for defendant then learned that its general superintendent who had recently undergone a severe abdominal operation had developed complications which made it impossible for him to attend the trial. Motion was thereupon made in behalf of defendant for continuance, which was based upon affidavit of the attending physician and an affidavit of counsel to the effect that the superintendent was the highest representative of the defendant in the Greenville area and had personally dealt with the plaintiff in the matters involved in the action. Upon the agreement of plantff's counsel that defendant's counsel's statement of what the absent witness would testify to if present be admitted in evidence so far as competent, the motion for continuance was overruled and the trial proceeded in the absence of the witness. Circuit Court Rule 27. Counsel affirmed in his affidavit that immediately upon going to his office after the opening of court he telephoned to notify defendant's superintendent that the case would be tried next day and thereupon learned for the first time that the superintendent was ill and confined to his bed; that his testimony is essential to the defense because the supperintendent personally saw the violation of the rules of the defendant which resulted in the discharge of plaintiff; he prepared the written notice thereof, etc. The affidavit stated the substance of the testimony of the superintendent, if he were present, as follows:

He has been the general superintendent since the organization of the company, has general supervision of its management and operation and is the highest official of it in Greenville. He hires and fires, and enforces the rules of the company which regulate its employees. Plaintiff was employed as a bus driver. On February 13, 1957, the witness was driving his automobile behind the bus which was operated by plaintiff. It approached a stop where twelve persons were waiting to board it, but it did not stop for them although plaintiff was thoroughly familiar with the stop. The witness then overtook the bus, stopped it and told plaintiff to go back and pick up the passengers, which he did, but only six remained by that time and they boarded the bus. In view of plaintiff's past unsatisfactory record in the same respect the witness decided to suspend him from employment which he did on the morning of February 14 and personally delivered to him written notice of his indefinite suspension, in accord with the contract between the company and the Brotherhood of Railway Trainmen which represented the bus operators. The notice was copied in part in the affidavit, as follows:

"1. Not working for the company's interests;

"2. By failing to stop and pick up passengers at the Greenville General Hospital on his 3:10 P. M. trip leaving Parker High School on February 13, 1957.

"If you desire a hearing on the above charges, please notify me within five (5) days."

Plaintiff appeared at the superintendent's office on February 15 and was abusive of the company and its management. Consideration of re-employment of him was refused and he was so notified. However, he telephoned the superintendent that evening and asked for another chance. He was told that his record, which reflected a long series of complaints from passengers, did not justify "another chance" but the superintendent agreed that plaintiff report for work on the morning of February 18th and that meanwhile the general manager of the company, located in Charlotte, North

Carolina, would be called and the matter submitted to him. The superintendent talked to the general manager on February 18th and reviewed plaintiff's record with him. The general manager concluded that the record did not justify the giving of "another chance" to plaintiff. The superintendent summoned plaintiff at the end of his work on February 18th and notified him that his employment was finally terminated. He asked for vacation pay and, although there was no obligation on the part of the company, the superintendent agreed that plaintiff should be continued on the payroll for two weeks after February 18. No request was received from plaintiff for hearing upon his discharge, as was required by the labor contract.

The affidavit of the superintendent's physician related that he had underegone severe abdominal operations in 1956 and 1957 after which an abscess developed. It occasionally flares up and drains, necessitating confinement to bed for periods of five to seven days. The abscess was drained on November 11, 1957, and the patient was placed on antibiotics. He is improving but should remain in bed for several days. It would be dangerous for him to be up in the next few days or try to attend court or any other business. He will be totally disabled for seven to ten days.

Upon trial the plaintiff testified concerning his interview with the superintendent on February 15, that he (plaintiff) exacted privacy and that the superintendent agreed to withdraw the charges and put plaintiff back to work, which was confirmed in a telephone conversation later that day; and that late Monday the superintendent told him that he had bad news, that he had been directed to terminate plaintiff's employment. After this no charges were served upon him. Plaintiff contended, and the court held, that this testimony of plaintiff was evidence of waiver of the contract terms and of the former notice of suspension, whereby plaintiff was relieved of the contract obligation to request a hearing if desired. To this testimony defendant was powerless to reply for lack of its only witness, its superintendent, on account

of whose unavoidable absence motion had been made for continuance. Waiver had not been pleaded by plaintiff, as apparently conceded was not necessary; but the issue surprised defendant who was not advised by the pleadings that it would arise. Admittedly, this is consideration in retrospect of the motion to continue, but it shows the vital disadvantage to which defendant was put by being forced to trial without its superintendent. By his own testimony, plaintiff insisted on a private interview with the superintendent and testified that on that occasion the charges, of which he had received written notice per the contract, were withdrawn by the superintendent. With the latter absent from the trial on account of illness, it can hardly be said that defendant received a fair trial. In practical effect, the absent superintendent *was* the defendant and, at the same time, its only possible witness upon this crucial issue of fact. The trial record indicates that this was the turning point of the case .

It appears that the next term of court was within about two months, so little delay would have resulted from continuance. There had been none of consequence previously; the action was commenced on May 28, 1957.

*Ilderton v. Charleston Consol. R. & Ltg. Co.,* 113 S. C. 91, 101 S. E. 282, 283, is in point. It was an action for damages for personal injuries which resulted from plaintiff's collision with defendant's street car. At the time of trial the motorman was overseas on military duty but was expected to return home within a few months and by the time of the next term of court. He was defendant's chief witness and the alleged delicts were his. Because of his military duties it had been impossible to take his testimony beforehand. Upon motion for continuance defendant's attorney made affidavit of what the absent witness' testimony would be, which plaintiff's attorneys admitted. The motion was refused and there was verdict and judgment for the plaintiff which was reversed upon appeal for error in refusing defendant's motion for continuance, and the court said:

"Considered from the standpoint of the rights of the defendant, the circumstances were exceptional. The situation of defendant arose out of circumstances over which it had no control. Of course, such circumstances may operate to deprive a party of the testimony of the only witness by whom his action or defense can be established, as in the case of the death of such witness. But here it was only a temporary absence of the witness, whose presence could have been had at the next term of the court, which would have caused a delay of only three or four months at most. A party ought not to be compelled to go to trial in the absence of the only witness by whose testimony he can make out his action or defense, unless it appears that he has been guilty of negligence in procuring the attendance of such witness, or in obtaining his testimony. * * * Considering all the circumstances, and the great disadvantage to a litigant which almost necessarily arises from the absence of so important a witness, and the short delay that would have been caused, we think defendant's motion ought to have been granted."

Other considerations in support of the decision of the court were stated but it fairly appears that the result would have been the same without them.

The *Ilderton case* was cited with approval in *Bessinger v. National Surety Corp.,* 207 S. C. 365, 35 S. E. (2d) 658, 661. That was an action in tort for damages against a State Highway Patrolman and the surety on his official bond. Because of military duties he could not be present at the trial although he was in court on the day before. Motion for continuance because of his absence was refused. After verdict for plaintiff against the surety, against whom alone the case had proceeded to trial, the court granted a new trial. This court affirmed and said, "It may be that had the motion for new trial been refused, and the respondent here had appealed from the refusal to grant a continuance of the case over the term, this Court would have been forced to hold that reversible error had been committed. See *Ilderton v. Charleston C. Ry & Lighting Co.*"

It is elementary that the granting or refusal of a motion for continuance is within the discretion of the trial court. 6 S. C. Dig. Continuance p. 348 *et seq.,* Par. 7. However, there are exceptions to almost all rules; indeed, there is an adage that exceptions prove the rule. We have concluded that this case ought to be an exception to the rule against reversal of orders upon motions for continuance, rare though such is. We think that it was an erroneous exercise of discretion to refuse appellant's motion under the unusual circumstances of this case, and it will be reversed.

Respondent cites *Barnes v. Atlantic Coast L. Ry. Co.,* 110 S. C. 259, 96 S. E. 530. That authority was carefully and effectively distinguished in the *Ilderton case,* which is equally applicable here and need not be repeated.

The other grounds of appeal will not be considered; for the present they have become moot.

Reversed and remanded for new trial.