## Miller v. Atlantic Refining Co.

714

*Edwin S. Heins* and *Samuel H. Stewart,* for plaintiff.

*John J. McDevitt, 3rd,* for defendant.

CRUMLISH, J., July 3, 1957.—This is an action in trespass for personal injuries. A trial jury was had; the jury failed to reach a verdict and were discharged. Defendant subsequently filed a motion for judgment non obstante veredicto upon the whole record. We are asked now to rule upon that motion. Technically, under the Act of April 20, 1911, P. L. 70, sec. 1, 12 PS §684, defendant's proper motion is for judgment on the whole record, not for judgment n. o. v. We will treat the motion as one for judgment on the whole record, defendant's requests for binding instructions having been refused.

Defendant is the owner of an automobile gasoline and oil service station on the northeastern corner of Seventh and Penn Street, Borough of Huntingdon, Pa. Plaintiff brought this action for injuries allegedly sustained on August 9, 1952, when, as she was walking through what appeared to her to be dirty water flowing from defendant's premises "she was suddenly and violently thrown to the pavement by reason of having stepped into a quantity of fresh oil which was concealed from her view by said dirty water."

The answer filed by defendant avers, inter alia, that at the time of alleged accident, the premises were in the exclusive control of its lessee, P. L. Dysart, under a written lease agreement; that defendant was owner, but out of possession and control of the premises since September 1, 1939, under a series of lease agreements;

that the lessee and his agents, servants and employes had sole and exclusive possession and control over the operation and maintenance of the premises; that defendant was in no way responsible for the conduct of its lessee, his agents, employes and servants; that the lessee was operating the station in his own behalf; wherefore, defendant denies any liability to plaintiff.

The general theory behind plaintiff's action against defendant is that as the owner of the premises, defendant knew or should have known that the condition complained of had existed for a long period of time prior to its lease agreement with Dysart; that at the time of the leasing the sidewalk was in the condition of being caked with grease, and dirty water was permitted to flow over the sidewalk into the street, therefore defendant should be charged with knowledge of the condition which caused plaintiff her injuries; that having shown defendant to be the owner of the premises; that its products were being sold on the premises; that this was sufficient proof that defendant was in actual possession thereof and had a duty to see that the sidewalk was maintained in a condition safe for pedestrians; that, furthermore, the primary duty of keeping a city pavement in repair rests upon the owner of the abutting premises. Plaintiff also asserts that merely because defendant and Dysart call their arrangement a lease agreement, the relationship of landlord and tenant does not become applicable when used in connection with their respective duties regarding sidewalks abutting the property in question.

It is argued on behalf of plaintiff that defendant had constructed the gasoline station in such a manner that any water used in the course of the business on the premises would have to flow across the public sidewalk for disposal; that the condition had been there a

long time prior to the lease agreement; that it was present at the time of the leasing, and constituted a nuisance for which the owner, although out of possession, should be held liable. In addition, certain gasoline pumps were located in such a way that automobiles would have to extend out on the sidewalk while being serviced, thus increasing the likelihood of the spilling of gasoline and oil, and dripping of grease on the public sidewalk; that condition had existed for a long period of time, constituting another reason defendant should be held liable for a dangerous condition to pedestrians.

Defendant's position is that at the time of the alleged occurrence it was an owner, out of possession, and any injury sustained on the premises during the tenure of the lease became the responsibility and liability, if any, of the tenant. Furthermore, since plaintiff's claim rests on a "slip" on an area of grease or oil obscured by discolored or dirty sidewalk and water running from a hose on the premises, the legal cause and substantial factor of plaintiff's injury was the alleged oil or grease underneath the water on which she stepped; since the dirty sidewalk and water was not said to have caused her to fall, it cannot be considered as a substantial factor of her injury. Also, defendant asserts there must be sufficient evidence of constructive notice of the unsafe condition to enable a jury to impute negligence to defendant; that the evidence does not disclose whether this was fresh oil or grease or had been there for a period of time; nor was there any evidence that Dysart or his employes placed the substance on the sidewalk.

The basic issue in this case is: Is it for a jury to determine the liability of the owner of a gasoline filling station out of possession by written lease, for the fall of a third person caused by a slip on a spot of

grease or fresh oil, the presence of which was obscured by the flow of dirty water across the sidewalk?

In Knickerbocker v. Scranton, 344 Pa. 317, 321 (1942), the court calls attention to the long-standing rule that if a defect occurs on a sidewalk of premises while the owner is out of possession, and a tenant has leased the entire premises, the tenant and not the owner is liable for injuries to a stranger using the sidewalk. It is reasoned that the tenant who takes exclusive possession of the premises places himself in the position of owner, with consequent responsibilities; he is in the best position to notice and remedy any defects promptly and prevent injuries to pedestrians. While the case before us does not involve a sidewalk defect within the meaning of the Knickerbocker case, supra, we find the principles therein enunciated significant.

In Ford v. Philadelphia et al., 148 Pa. Superior Ct. 195, 201 (1942), the court states "the general rule that a tenant in possession always is, and the landlord may be, liable for an injury to a third person arising from negligence."

In McLaughlin v. Kelly, 230 Pa. 251, 255-57, 260 (1911), it is stated that the owner of a premises has the primary duty of keeping premises in repair; that the primary duty of keeping the sidewalk in repair rests upon the owner of the abutting premises. In this case, plaintiff fell into an opening in the pavement. The premises were in the possession of a lessee. The landlord was found liable for the reason that the defect was in existence at the time of leasing the premises, it was his duty to remove the nuisance or defect before leasing the premises, and his failure to do so placed the responsibility for plaintiff's injury upon him. The question of whether the landlord had actual knowledge of the defective covering over the hole in the sidewalk was submitted to the jury; the jury found that

under the circumstances the defendant knew or by reasonable diligence could have known of the defect.

In Mitchell et ux. v. George A. Sinn, Inc., 308 Pa. 1, 4, 8 (1932), plaintiff sued a landlord out of possession for injuries sustained when she slipped on a thin coating of ice alleged to have been formed by the freezing of an overflow of water from a clogged drain. The theory on which the claim was based was that the premises were defective when leased, the landlord had knowledge of the defect, thus became liable for the injury, regardless of tenant's covenant to repair. The court stated, at page 4:

"The liability of a landlord to third persons, arises only when he has (1) contracted to repair, or (2) let the premises in a *ruinous condition* or (3) expressly licensed the tenant to do acts amounting to a nuisance: Cunningham v. Rogers, 225 Pa. 132, 136." (Italics supplied.) In reviewing the applicable cases, the court stated at page 8, "We said: 'The landlord is . . . liable if the premises *are dangerously constructed or a nuisance per se.* . . . To cause him to be liable, the premises must be so constructed or be in such condition that in and of itself it amounts to a nuisance: Brown v. White, 202 Pa. 297.' "

The court held the landlord had no reason to believe the condition on the premises would be dangerous, since he could not reasonably have foreseen that injury would result from the defect. Judgment n. o. v. was entered.

In Harris v. Lewistown Trust Company, 326 Pa. 145, 146, 149, 150, 152-53 (1937), damages were sought for injuries sustained by tenant's wife as the result of the collapse of a cellar stairway, on the basis of an oral promise on the part of the landlord to repair. The stairway was in an "obviously defective and decayed condition". In an exhaustive review of landlord-

tenant cases, the court discussed the responsibility of a landlord to his tenant as contrasted with his responsibility to third persons, and on page 153 stated:

"The doctrine of *'condition amounting to a nuisance'* is confined to third persons or strangers to the premises. . . . The word 'nuisance', as used in the law, implies the transmission of the effects beyond the boundaries of the land upon which the objectionable condition exists."

Recovery was denied on the basis that this was not a hidden defect, but one of which the tenant had full knowledge; therefore the rule of caveat emptor applied. The court contrasted the situation before it with that of a landlord who leases premises which has a dangerous condition upon it, when the premises will be used for public entertainment. In such a case the landlord owes a duty to the public to protect them against danger, and he cannot escape responsibility because the tenant has covenanted to repair: Folkman v. Lauer, 244 Pa. 605 (1914). In the Folkman case, supra, the landlord leased a grandstand in a dilapidated condition. Injury to the general public was a foreseeable happening.

Summarizing the foregoing cases, we find a landlord will be liable to third persons injured on leased premises when he has knowledge of the existence of a dangerous condition at the time of leasing; when he owes a duty to the public to protect it from the dangerous condition; when he has knowledge that the construction of the premises makes injury to a third person foreseeable consequence of said construction, or, when the premises constitute a nuisance per se.

In the instant case, the relationship between defendand and P. L. Dysart was that of landlord and tenant. Under the terms of their written lease agreement, Dysart was charged with the responsibility of keep-

ing the premises clean, and keeping the sidewalks clear of snow, ice and any other obstructions thereon, and charged with the prompt removal of all refuse of any kind. Dysart had full and exclusive control of the leased premises by the terms of the lease.

Evidence was introduced at trial to show that prior to the lessee's possession of the premises, it was commonplace for the sidewalk abutting defendant's premises to be dirty, grease-spotted and covered by the flow of water used for washing cars. Plaintiff argues that defendant had, or should have had knowledge of the condition, and that the construction of the premises would result in a continuation of such a condition so long as the premises were used as a gasoline filling station. The evidence showed there was no wash rack at the station, but there was a lubrication rack. Automobiles were washed in front of the lubrication rack, and the dirty water would flow across the sidewalk to the street. This occurred whenever a car was washed because of the slope of the station, and the absence of any other drainage arrangement.

In our opinion, a jury might charge defendant, if in possession, with knowledge of the flow of dirty water. Where plaintiff claimed damages for injuries sustained as the result of a slip on ice formed by water running off the premises, a question of whether or not defendant had notice of the condition was for the jury: Brown v. White, 202 Pa. 297, 311 (1902). But as to owners out of possession, see Richey v. Armour, 293 Pa. 127 (1928). Here, moreover, we have an additional factor to consider, the presence of fresh oil on the sidewalk, obscured by the flow of dirty water. Plaintiff testified that she slipped on fresh oil, and knew it was fresh because it was soft, slimy and runny. Viewing this situation in the light most favorable to plaintiff as we are bound to do, and concluding that defendant had, or should have had knowledge

of faulty drainage on the premises when the lease to Dysart was executed, still, was the flow of water toward the sidewalk at the time of plaintiff's fall the legal cause of the accident?

Under the principles enunciated in DeClerico v. Gimbel Brothers, Inc., 160 Pa. Superior Ct. 197, 199, 200 (1947), we cannot so hold. In the DeClerico case, supra, plaintiff sought damages against a landlord in possession for injuries sustained when she fell while descending defendant's dimly lighted stairway and stepped upon a piece of paper which had under it a "soft, mushy substance which caused her to fall". The court speaking through Arnold, J., held, at page 199:

"In what may be termed the obscuration cases, i.e., where the dangerous condition is hidden by some substance such as water, snow, paper or confusing lights, the obscuration is never the legal cause of the harm, but operates in certain cases to relieve the injured party from the contributory negligence of failing to observe the danger. . . . Since the legal cause of the plaintiff's harm was the soft substance on the tread of the step, there can be a recovery *only upon a showing that the defendant had actual or constructive notice of its presence.*" (Italics supplied.)

It is a matter of common knowledge that gasoline and oil will frequently be spilled on the premises of a filling station; further that some automobiles will drip oil while being serviced. It is well known that the premises require periodic cleaning to remove the hazard thus created. The pivotal point of this case is: Should defendant be charged with notice of the presence of fresh oil on the spot where plaintiff slipped, and further charged with liability for failure to remove it?

The evidence disclosed that the lessee cleaned the premises regularly, except that sometimes he was too

busy, and overlooked the task. The lease agreement between the parties placed the responsibility for cleaning the sidewalk upon the lessee, and from the evidence presented, he recognized his obligation. Thus, we have a condition that would happen, be corrected, and happen again. The testimony does not show that the spot at which plaintiff fell always had grease or oil on it, so that defendant could be charged with notice of a continuing hazardous condition to pedestrians with a corresponding duty to correct the cause to eliminate the danger. The manager of defendant company for the Altoona area stated that to his knowledge no complaints had been made to his office regarding any faulty condition of the premises. He testified that it was the practice of the company to make periodic inspections of the premises to keep them in a safe condition.

On the basis of the record before us, there is nothing on which the jury could base a finding that defendant had, or should have had, notice of the presence of the oil at the time of plaintiff's fall.

The appearance of oil on the sidewalk abutting defendant's premises was apparently spasmodic, varying in location and amount, and constituted a temporary hazard until removed. Clearly, the lessee in possession should be charged with the responsibility for removing the danger. See Grinage v. McGlinchey, 62 Pa. Superior Ct. 294 (1916). With a recurring and removable potentially dangerous condition such as we are here considering, a landlord out of possession would be faced with an intolerable burden were he to be charged with notice and the responsibility of removal; he would have to station an employe on the premises for the sole purpose of protecting him from his contingency. We know of no Pennsylvania case that imposes such a burden on a landlord out of possession.

In our opinion, in the instant case, defendant could not foresee, and should not be charged with constructive notice that a fresh spot of oil or grease would blot the pavement at the time the lessee or his employee was engaged in washing a car, and that the flow of dirty water would hide the blot, thus creating a dangerous condition, and thereby cause injury to the plaintiff.

Accordingly we enter the following

*Final Order and Judgment*

And now, to wit, July 3, 1957, in accordance with the foregoing, judgment is now entered on the whole record in favor of defendant, and against plaintiff.